CASE 4—ACTION BY JOSEPH B. SYDNOR, ADMR. OF ELIJAH T. RENFRO, AGAINST THE KENTUCKY & INDIANA BRIDGE & R. R. CO., FOR CAUSING THE DEATH OF APPELLANT'S INTESTATE.—NOVEMBER 15.

# Kentucky & Indiana Bridge & R. R. Co. v. Sydnor.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION, NO. 2—MATT. O'DOHERTY, JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

MASTER AND SERVANT—FELLOW SERVANTS—APPLICABILITY OF DOCTRINE —STRANGERS TO RELATION—NEGLIGENCE—COMPARATIVE NEGLIGENCE—DISCOVERED PERIL—JOINT TORT FEASORS.

1. In an action for injuries, a charge to find for plaintiff unless the jury believe that plaintiff, by his negligence, so far

contributed to his injury that, but for said negligence, he would not have been injured, is not open to the objection of injecting into the case the doctrine of comparative negligence.

2. It is the duty of the servants of a switch company operating trains in its yards to keep a lookout for car repairers employed by railroad companies, who are permitted by the switch company to repair the cars of their employers in the switch yard.

3. Where operatives of a switch train could, by ordinary care, have discovered a signal placed on the track to notify them of the presence of a car repairer working under some cars in time to have averted injury to such car repairer, but negligently failed to so discover it, in consequence of which the car repairer was injured, their employer was liable, although the car repairer was negligent in not having placed the signal in a more conspicuous place.

4. The doctrine of nonliability of a master for injury to a servant caused by the negligence of a fellow servant is based upon the implied contract of the servant to assume the risk of his fellow servant's negligence, and does not extend to a stranger to the relation, who in conjunction with a servant injures a fellow servant of the latter, but he is liable like any other joint tort feasor.

HUMPHREY, BURNETT & HUMPHREY, ATTORNEYS FOR APPELLANT.

POINTS AND AUTHORITIES.

1. The doctrine of comparative negligence does not obtain in Kentucky, nor in any State except in Georgia and Illinois, and there in a modified form.    Shearman & Redfield on Negligence, sec. 102; Beach on Contributory Negligence, sec. 25; McDonald v. International, &c., Railway Co., 86 Texas, p. 1; 40 Am. St. Rep., 814.

2. Where, by an agreement between two co-employes, it becomes the duty of one to look out and give notice to the other of approaching danger, and he undertakes to perform that duty, the relation of principal and agent exists between them in this respect, and negligence of the former in the performance of such duty is imputable to the latter. Abbitt v. L. E. & W. Ry. Co., 150 Indiana, 498, 50 N. E., 729; Nisbet v. Town of Garner, 75 Iowa, 314, 39 N. W., 518; Town of Knightstown v. Musgrove, 116 Indiana, 566, 18 N. E., 453.

3. Where R. and M. are engaged jointly in repairing a car in defendant's yards, and M., with the knowledge and consent of R., undertakes to place a blue flag on the track as a warning

to those in charge of trains, and he does this in an improper manner and places the flag in an improper place, and by reason thereof a train is backed against the car under which R. is at work and kills him, the negligence of M. is imputable to R., and there can be no recovery for the death of the latter, under the rule as to fellow servants, unless the servants of defendant, superior in authority to both R. and M., have been guilty of gross or willful negligence. C. N. O. & T. P. Ry. Co.'s Rec. v. Roberts, 23 Ky. Law Rep., 264, 266.

BENNETT H. YOUNG, FOR APPELLEE.

1. It is confidently submitted that the record in this case fails to sustain appellant's theory that McDowell was negligent in any respect. But, assuming that he was, his negligence can not relieve the appellant from its liability for negligently causing Renfro's death.

2. It is now well settled that common employment, i. e., the doctrine of fellow service, can not be pleaded in bar of an action against a master unless both the negligent and injured persons were in his service and under his control at the time of the injury.

3. Since the doctrine of fellow service is based upon the contract of the servant to bear the risk of his fellow-servant's negligence on the one hand, in consideration of the corresponding obligation of the master to take due care to select competent servants on the other, it follows that, where neither the injured nor the negligent persons was in the employ of the defendant, the doctrine can not be relied on; and for a two-fold reason:

(1) The negligent person not being in the employ of the defendant, obviously the defendant has not selected him; and there does not exist that obligation to use due care in selection which is the consideration for, and correlative of, an injured servant's undertaking to bear the risk of the negligence of his fellow-servant.

(2) The injured person not being in the employ of the defendant, no contractual relation exists from which an undertaking to bear the risk of a fellow-servant's negligence can be implied.

4. In the case at bar, neither Renfro, who was killed, nor McDowell, whose negligence is relied on by the appellant, sustained any contractual relation with the appellant, K. & I. Bridge Co. They were both employed by the Southern Railway. Appellant's plea of McDowell's contributory negligence must, therefore, fail, even assuming that the proof supports the contention that McDowell was negligent.

Kentucky & Indiana Bridge & R. R. Co. v. Sydnor.

### AUTHORITIES CITED.

Farwell v. Boston & W. R. Corp., 4 Met. (Mass.)    49; 38
Am. Dec., 339; Johnson v. Lindsay, 65 L. T. N. S., 97; Swainson
v. N. E. R. R., L. R., 3 Exch. Div., 349; Smith v. N. Y., &c., R.
R., 19 N. Y., 132; Stenson v. Atlantic, &c., 57 N. Y., 108; Tay-
lor v. West Pac., 45 Cal., 334; Railroad v. Mackney, 83 Tex., 410;
Chicago v. Chambers, 68 Fed., 153; Gray v. Phil., &c., R. R., 24
Fed., 168; Beach on Contributory Negligence, sec. 25.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellee, Sydnor, as administrator of Elijah T. Renfro,
filed this suit against appellant to recover for the death of
his intestate, which was charged to have occurred by reason
of its gross negligence. The defendant traversed the allega-
tions of the petition, and pleaded contributory negligence
on the part of Renfro, but for which he would not have been
injured. It was also pleaded that Renfro was working with
one of appellant's servants employed in the same grade of
service and engaged in the same character of labor, neither
being superior in authority to the other, and that the acci-
dent which caused the death of Renfro was due either wholly
to the negligence of his fellow servant or to his negligence
together with the negligence of the fellow servant. The jury
to whom the case was submitted found a verdict in favor
of the plaintiff in the sum of $6,000, on which judgment was
entered, and, the defendant's motion for a new trial being
overruled, it appeals.

The facts of the case are as follows: The plaintiff's intes-
tate and John L. McDowell were car repairers in the service
of the Southern Railway Company. They were directed by
their foreman, O. L. Harris, to make certain repairs to a
freight car, which was at the time in the yard of the de-
fendant, upon one of the tracks sometimes used as a repair
track. To make the repairs it was necessary for them to
get under the car. It was customary for workmen engaged

in repairing a car to place a signal upon it upon the track to indicate to the switching crews in the yard that men were working on the car, and that no engine or cars should be allowed to come in contact with it. The signal used for this purpose was a blue flag, and was well understood by the employes in the yard. McDowell was proceeding to put out his flag preparatory to going under the car, when the defendant's yardmaster, George A. Zumer, told him not to put the flag up. McDowell told Zumer he would not until he was through switching. The engine went in and took out a coal car and took it in to the Southern yard. McDowell then put up his flag, and he and Renfro went under the car, and proceeded to repair it. About a half hour afterwards, and just as they had finished the work, when McDowell had come from under the car, and Renfro was about to come out, but had not gotten out, a train of cars under the control of the defendant was kicked upon the track striking the car upon which Renfro had been at work just as he was in the act of coming from under it, and killing him instantly. No notice of the approach of the train was given, and no lookout maintained on the rear cars as they were kicked in. McDowell had first placed the flag upon a car in front of the one he was working on, but his attention being called to the fact that, as the track was curved, the flag here would be obscured by a car standing on another track, he walked down the track about 100 feet and set up the flag in the center of the track, attaching it to an iron rod which he stuck down between the cross ties, the flag being about 4 feet above the ground. The engine which kicked the cars in was some distance from the flag, still further around the curve, there being 16 cars in the train, and the engineer could not see the flag by reason of an office building which stood between him and the flag, in consequence of the curve

of the track. As there was no lookout on the cars, the flag was not seen, and was run over by the cars as they were kicked in. The flag was found after the accident between the rails. There was proof by the defendant that the flag was not securely set up, and that it should have been placed further around the curve and down near the office, so that the office would not have obstructed the view of it. It was something over 100 feet from where the flag was set to the point indicated. The proof for the plaintiff was that the flag was securely set up, and was at the proper place. Two witnesses saw the flag standing between the tracks shortly before the cars were kicked in, and it appeared, from its position when found after the accident, to have been knocked down by the train. The verdict of the jury should be received as settling the disputed facts in appellee's favor. McDowell and Renfro were fellow servants in the same grade of service, working together in repairing cars. Before going under the car, Renfro asked McDowell if he had put out the flag, and he was informed by him that he had done so. It was the duty of Renfro, no less than of McDowell, to put out the flag before going under the car. The cars were kicked in at a low rate of speed, and, if an outlook had been kept on them, the flag could have been seen, and the collision avoided; but it was not customary to have a man on the rear end of a train of cars when kicked in on a track in the yard.

The defendant moved the court to give the jury this instruction, which was refused by the court: "(12) The court instructs the jury that if they believe from the evidence that Renfro and McDowell were associated in the work of repairing the car under which Renfro was killed, and that the said Renfro left to McDowell the task of giving the usual warning of their presence under said car, then the

said Renfro was bound' for the manner in which the said McDowell performed this task; and if the jury believe from the evidence that McDowell was guilty of negligence in the manner in which he gave the said warning, if he gave any warning, and that his negligence contributed to the accident in which Renfro lost his life, so that such accident would not have happened except for the negligence of the said McDowell contributing thereto, the law is for the defendant, and the jury shall so find." The court then of its own motion, and over the objection of the defendant, gave to the jury the following instructions: "(1) If the jury shall believe from the evidence that the agents or servants of the defendant, the Kentucky & Indiana Bridge & Railroad Company, by negligence on their part caused the cars of the defendant company under their control to be backed against the car under which the plaintiff's intestate was working, and that by reason of such negligence (if any there was) on the part of defendant's said agents or servants the plaintiff's intestate lost his life, then the law is for the plaintiff, and the jury shall so find, unless the jury shall believe from the evidence that said Renfro, by negligence on his part, so far contributed to his injury that, but for said negligence (if any there was) on his part, he would not have been injured. (2) But unless the jury shall believe from the evidence that the plaintiff's intestate, E. T. Renfro, lost his life by reason of the negligence of the defendant's agents or servants, or some of them, in the operation and management of the cars which collided with that under which he is alleged to have been working when killed, the law is for the defendant, and the jury should so find. Or if the jury shall believe from the evidence that the said Renfroe, by negligence on his part, so far contributed to his injury that, but for such negligence, he would not have been injured, the law is for the defendant, and the jury

shall so find.   (3) If the jury shall believe from the evidence that the life of plaintiff's intestate, Renfro, was lost solely by reason of the negligence (if any) of his fellow workmen, or any of them, in the service of the Southern Railway Company, or by his own negligence and the negligence of said fellow workmen combined or concurring, then the law is for the defendant, and the jury shall so find.   But although the jury may believe from the evidence that the fellow workmen of the defendant were negligent, and that such negligence on their part contributed to his injury and death, nevertheless if they shall further believe from the evidence that the defendant's agents and servants in the control and operating of its cars were also negligent, and that such negligence on their part or on the part of any of them concurred with the negligence of the defendant's fellow workmen in causing his death, then the law is for the plaintiff, and the jury should so find."

In giving the third instruction the court apparently had in mind this allegation of the answer:   "Defendant further states that the said accident and the death of said E. T. Renfro was caused either wholly by the negligence of Renfro's fellow servant or by the negligence of his said fellow servant together with the negligence of Renfro himself; and it states that one or the other of said facts alleged alternatively is true, but defendant does not know which, and therefore pleads said facts in the alternative."   To have a correct understanding of the application of these instrucetions, it must also be remembered that appellant was not the master of the two car repairers, Renfro and McDowell.   They were employed, as stated, by the Southern Railway Company, and were in its service at the time.   Appellant is a bridge and transfer company.   In connection with the operation of trains across the bridge it maintains a switchyard in Louis-

ville, which is used ·by it as well as by its patrons, the connecting railroads, including the Southern Railway Company. It was then the custom of appellant to suffer these railway companies to make repairs on their respective cars at any point in this switchyard, the plan of protecting the workmen so 'engaged being the placing of the blue flag or signal over or near the car being repaired, which indicated to appellant's switching crews that · they must not connect to ·or touch the car while the flag was up.

Appellant complains of the instructions given, because, he argues, it incorporates into our law the doctrine of comparative negligence, a doctrine hitherto rejected by the Kentucky courts. We fail to so understand the effect of the instructions. The jury were not by them warranted in comparing the degrees of negligence of either decedent or his fellow servant and that of appellant further than has always been allowed in this State; that is, if the injury was inflicted by reason of the negligence of the deceased, or would not have occurred but for his negligence, then appellant is not liable, although it may have been also negligent. The instruction which tells the jury that if decedent and his fellow servant were both so negligent that the injury would not have happened but for it, notwithstanding appellant's negligence, the law was for the appellant, merely states in another and appropriate form the doctrine of contributory negligence, coupled with the idea that if another, not a servant of appellant, by his own act alone or in conjunction with the decedent, brought about the injury, appellant is not liable. Whatever may have been the opinion of the circuit judge or counsel on the subject of the master's liability to an injured servant where the injury was caused by the joint negligence of the master and of a

fellow servant of the injured person, that question does not arise in this case. We therefore do not decide it.

In this case the decedent was at the place of injury as a matter of right, and where his presence ought to have been anticipated by appellant's switching crew, in view of the custom of allowing repairs constantly to be made at that and similar points. It was, therefore, the duty of those in charge of the engines and moving cars to keep a lookout for the car repairers and their signals. If the car repairer put out a signal, it would manifestly be useless as a protection unless those operating the trains were required to look out for it, and govern their actions by it. The signal could have no effect on the moving trains unless it was seen. It could not be seen unless some person was so placed on the approaching cars that he could see it. Therefore it was proper to tell the jury that although decedent was negligent in not causing the signal to be placed further around the curve, yet if appellant's servants in charge of the train by the exercise of ordinary care on their part could have discovered the signal as it was in fact placed in time to have averted the injury, and failed, because of negligence, to discover it, by which the injury was occasioned, appellant was liable. This was in line with the doctrine frequently announced by this court that where, in a city or town, at street crossings and the like, where persons have the right to be and may reasonably be expected, it is the duty of those operating trains there to keep a lookout to discover them, and a failure to do this is actionable, notwithstanding the contributory negligence of the injured person, if by observing that duty the injury could have been averted notwithstanding the negligence of the injured person. While negligence of trespassers need not ordinarily be anticipated, nor that of employes or licensees, yet where the duty is to main-

tain a lookout for their presence the operator can not shut
his eyes to their actual situation. The very reason that they
are required to keep a lookout at street crossings and at
other places where others may be expected, is because such per-
sons may not always, and do not always, take proper care in
protecting themselves; in other words, are themselves negli-
gent. But knowing of their presence and peril always imposes
the duty upon the operator to refrain from injuring them,
if possible within the means at hand.    Thurman v. L. &
N. R. R. Co., 34 S. W., 893, 17 Ky. Law Rep., 1343; Johnson
v. L. & N. R. R. Co., 91 Ky., 651, 25 S. W., 754; L. & N.
R. R. Co. v. Wolfe, 80 Ky., 82, 3 R., 576; Gunn v. Felton,
Rec'r, 108 Ky., 561, 22 R., 268, 57 S. W., 15; Railroad Co.
v. McCoy, 81 Ky., 404; Flynn v. Lou. Ry. Co., 110 Ky.,
662, 23 R., 57, 62 S. W., 490; L. & N. R. R. Co. v. Potts,
92 Ky., 30, 13 R., 344, 17 S. W., 185.    So, if he has reason
to believe they are in peril by knowledge of the fact that
they are apt to be at the point of peril, he is under like
duty to look for them.    His failure to look under such cir-
cumstances is equivalent to his failure to use proper pre-
caution to avert the injury after he has discovered the
jeopardy.

McDowell was a fellow servant of decedent, Renfro, in
repairing the car, it is true.    But it does not follow from
that fact that anybody in connection with McDowell could
wrongfully injure or kill Renfro in that work and escape
liability on the ground that the fellow servant, McDowell,
aided in the wrongful act.    Nothing is better settled than
that, when two or more by their joint tort damage another,
the joint tort feasors are jointly and severally liable to the
injured person for his entire damage.    The doctrine of non-
liability of master or employer to one of his servants for
an injury inflicted by the negligence of a fellow servant

is based upon the implied contract of the parties, which is that each servant agrees to assume the risk of his fellow servant's negligence, the correlative undertaking of the master being that he will use reasonable diligence to engage none but competent fellow servants. If the master notwithstanding engages incompetent workmen, from whose negligence damage is sustained by his fellows, the master is liable for the injury, because it was brought about by a breach of his implied undertaking. But this assumption by the laborer of his fellows servant's negligence—or, to put it differently, the excusing of the master for the act of such —is the result of the contract between the master and the servant, and is personal to them. A stranger to the contract is not entitled to its benefits, for he does not bear any of its obligations. As to him, the fellow servant with whom he acts in doing the wrong is like any other joint tort feasor. They are both liable for the injury they have inflicted by their negligent acts. Pugh v. C. & O. Ry. Co., 101 Ky., 77, 19 R., 149, 39 S. W., 695, 72 Am. St. Rep., 392. Farwell v. Boston & W. R. Corp., 4 Metc., (Mass.) 49, 33 Am. Dec., 339; Johnson v. Lindsay, 65 Law T. (N. S.) 97; Smith v. N. Y., etc., R. R. Co.; 19 N. Y., 132, 75 Am. Dec., 305; Gray v. Phil., etc., R. R. (C. C.) 24 Fed., 168.

Applying these principles to the facts in this case, as Renfro and McDowell were not servants of appellant, Kentucky & Indiana Railroad & Bridge Company, the latter is not entitled to any benefit of the doctrine applicable as between a master and his servants. The third instruction seems to fairly submit this view of the case.

Perceiving no error prejudicial to appellant's substantial rights, the judgment is affirmed, with damages.