## Smith et al. v. Ridner.

Feb. 2, 1943.

Stephens & Steely for appellants.

L. O. Siler and W. B. Early for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellee, F. M. Ridner, and Mary Perkins were married in 1909. They lived in the Perkins home with Mrs. Ridner's insane mother until the latter's death around 1926 or 1927. Thereafter the Ridners became the joint owners of the Perkins homestead, which consisted of a dwelling and outbuildings and some 10 acres of land. Mrs. Ridner made a will in 1927, under which she left all of her property to her husband. Beginning sometime in 1936, the appellants Zola Perkins Smith and Dorothy Perkins Lawson, then unmarried, began to spend considerable time in the Ridner home, apparently because of their inability to get along with their stepmother. On March 1, 1939, Zola Perkins Smith and Mrs. Ridner went to Williamsburg and Mrs. Ridner had an attorney prepare a will under which she left all of her property to the appellants, with the proviso that the appellee be permitted to live with the appellants in the Ridner home, and the further provision that his occupancy terminate upon his remarriage. Mrs. Ridner died about the middle of June, 1940. Both wills were offered for probate on July 1, 1940. The 1939 will was probated without protest on the part of the appellee. On July 6, the appellee executed and caused to be recorded in the will book a renunciation of the 1939 will, wherein he set forth that he elected to take a homestead in the real estate and a distributable share of Mrs. Ridner's personalty. In January, 1941, Mr. Ridner again offered the 1927 will for probate. The will was not probated, but an order was entered to the effect that Mary Ridner was a person of sane and sound mind at the time of the execution of that will, and it was directed that the will be recorded in the current will book. Shortly after that proceeding was had Mr. Ridner filed an appeal in the circuit court from the order probating the 1939 will, and also the one refusing to probate the will of 1927. He charged that at the time of the execution of the 1939 will Mrs. Ridner was insane, and also that she was unduly influenced by the appellants. He asked that that will be

set aside and that the 1927 will be substituted as the last will and testament of his wife. The appellants traversed all of the allegations of the petition. Upon the trial, as is usual in such cases, a wide range of proof was heard. The jury found the 1927 will to be the last will and testament of the deceased, and judgment was entered accordingly.

We are asked to reverse the judgment on the grounds that (1) Mr. Ridner had no right to contest the will after he had filed his renunciation; (2) the evidence was insufficient to show lack of mental capacity upon the part of the testatrix at the time of the making of the 1939 will; (3) undue influence was not shown; and (4) it was error to instruct the jury on the question of an insane delusion.

We are not confronted with a situation where one who has renounced a will is merely seeking to appeal from the order probating it, but rather with a situation where one is attempting to have substituted in the place of a latter will a former one. Obviously, Mr. Ridner would prefer to have substituted the 1927 will for the one executed in 1939, because under the former his wife left him all of her property, while under the latter she devised merely that he be permitted to live in the home with the appellants so long as he remained unmarried. Should he be unsuccessful in his main purpose, he would naturally want to stand upon his renunciation of the 1939 will. We see nothing inconsistent in his actions. Should we hold that he is bound by his renunciation, he would be powerless to make an effort to have the former will substituted for the latter one under this character of proceeding. This is an entirely different situation from that presented in Thompson v. Thompson, 134 Ky. 757, 121 S. W. 641, where a wife was not permitted to appeal from an order probating a will, having formerly renounced it.

Since the last three grounds relied upon for reversal are inter-related, we will discuss them together. As pointed out in Farber's Estate v. Farber, 282 Ky. 373, 138 S. W. (2d) 986, a wide range of proof is allowed in a proceeding contesting a will. An examination of the case of Berryman v. Sidwell, 278 Ky. 713, 129 S. W. (2d) 154, will show that, when an attack upon a will is based upon both mental incapacity and undue influence, the evidence is not required to be as convincing as where

only a charge of mental incapacity is made. The opinion in that case shows also that the evidence of only slight circumstances having to do with undue influence is sufficient to make such a question one for the jury. With these principles in mind we will look briefly to the evidence offered in the case.

There was testimony for the appellee that several members of Mrs. Ridner's family had become insane, in addition to her mother. A sister testified:

"Q. 19. Have other members of your family, Mrs. Davis, had apparently this mental trouble on account of jealousy? A. Well, my mother and Mary was also. Samp one time got jealous of his wife.

"Q. 20. It has been a trait of this jealousy running with the family? A. And weak mind, it all runs together."

All of the testimony shows that Mrs. Ridner was violently insane for some two weeks before her death, some of the witnesses saying that she was "wild." Several witnesses who lived in the vicinity of the Ridner home said that Mrs. Ridner did not act natural for the last two or three years before her death; that she seemed worried and upset and would often cry; that she did not look like she formerly did; and that she was not able to do her work as she had done. Hiram Lawson testified that he bought some corn from Mrs. Ridner in 1939; that she was unable to measure it, because she said her mind was worked up so she did not know what she was doing half the time; and that when he paid her for the corn she said that he would have to count the money because "I ain't got sense enough to do anything—I am aggravated to death." He testified also that Mrs. Ridner said that the Perkins girls (the appellants) "are aggravating me to death." Mr. Ridner testified that relations between him and his wife became strained in 1938 because of the presence of the appellants in their home; that Mrs. Ridner seemed worried and upset; and that she told him that Dorothy and Zola had told her he was running around with other women. Ridner said that he knew nothing of the second will until it was offered for probate. He denied that he had been running around with other women, and several witnesses who testified for him said that Mrs. Ridner had asked them whether they had seen Ridner with other women and they said that they

had not. The appellants denied making any such reports to their aunt, and said that they knew nothing of their uncle's·alleged affairs with other women. There was testimony for the appellee also that Zola said after the death of Mrs. Ridner that she had been working for the property; that she had it now; and that she had her Aunt Mary worked in her favor.' Dave Leach testified that his wife had agreed to purchase some seed potatoes from Mrs. Ridner in March, 1938; that when he went to get them she said that she did not remember anything about the transaction; and that she appeared to be disturbed and upset and she said that she had been worried and could not remember anything said to her.

The substance of the testimony for the appellants was that Mrs. Ridner's mind did not become deranged until just before her death in June, 1940. The attorney who wrote the will for her in 1939 said that he had known her for a number of years; that her mind appeared to be as sound at that time·as it had been before; that he discussed at length the questions relating to the disposition of her property; that Mrs. Ridner told him that she did not want anyone to know that she had made that will; and that she did not want him to tell Zola, who had come to town with her and who was in an outer room at the time the will was written. Zola said that she and her sister did not know of the 1939 will until just before their aunt's death; that they had done nothing to influence Mrs. Rider against her husband; that she was present at the time Lawson bought the corn from Mrs. Ridner and that it was in May instead of February; and that her aunt had no difficulty in measuring the corn and that Lawson paid her with a WPA check. The postmaster from whom Mrs. Ridner had bought some small bonds during the summer of 1939, with her nieces as beneficiaries, said that he noticed nothing unusual about her mental condition. Several neighbors testified that they saw no change in Mrs. Ridner's mental condition until shortly before her death. Some of the witnesses, with whom she was associated in church work, said that she continued to act as secretary and treasurer of the Sunday School until about three weeks before her death.

It can be seen from the foregoing summary of the evidence, in the light of the aforementioned principles to be followed in the trial of such cases, that there was ample evidence to warrant the submission of the case to the

jury on the questions of insanity and undue influence, and to support the finding.

We have noted that it is urged that it was error for the court to give an instruction on an insane delusion. The gist of the instruction was, if the jury believed that, at the time of the execution of the 1939 will, Mrs. Ridner was laboring under an insane delusion that her husband had wronged her in their marital obligations, and that her mind was unsound on the subject, thereby causing her to make an unnatural disposition of her property, they should find that instrument not to be her last will, although her mind was sound in other respects. The jury was told, however, that to invalidate the instrument on this ground they must believe that Mrs. Ridner was not only mistaken as to her husband having wronged her in their marital obligations, but that she must have been insane on the subject. The instruction was properly framed, and we fail to see how it can be contended that it was improper, in view of the evidence in this case. We have noted that there was evidence that the appellants had poisoned the mind of their aunt against the appellee by telling her that he was having affairs with other women, and also that he denied the charge. Furthermore, all of his witnesses to whom the question was addressed, as well as the appellants, said that they knew nothing of such conduct on his part. Aside from this, however, the attacking of the will on the charge of insanity would warrant the introduction of evidence as to a particular type of insanity, since, as we have indicated, our rule is to permit a wide range of evidence in a proceeding contesting a will. We think the cause was fairly and impartially tried, and there was sufficient evidence to warrant the submission of the case to the jury and to support its finding that the will of 1927 was the last will and testament of Mary Ridner.

Judgment affirmed.