## Leach et al. v. Alger et al.

April 23, 1946.

W. H. Keyser, Charles M. Russell, Lovel H. Liles, Russell Porter and William G. Kenton for appellants.

P. H. Vincent for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This appeal is from a judgment setting aside the will and codicil of E. R. Alger, deceased, on the grounds of undue influence and mental incapacity. The will was executed in 1942 and the codicil, prepared in Alger's own handwriting, was executed in 1944. Alger left surviving him the appellees, six legitimate children, all of age. He claimed also that he was the father of four illegitimate children, two of them by a Mrs. Shearwood, one by a Mrs. Palmer, and one by Hattie Leach. These children ranged from 16 years to 9 months in age. Alger's last illicit affair was with Hattie Leach. Donna Kay Leach is the principal beneficiary under the codicil to the will. The bulk of the remainder of the estate was left to the other illegitimate children and Hattie Leach.

For many years Alger was a carpenter's foreman on the C. & O. Railway. He seems to have been an industrious man, with good business judgment, and was a good provider for his family. About 20 years ago his wife became an invalid and about that time he began his illicit affairs with other women. He boasted of these affairs before his invalid wife and members of his family. He appears to have been oversexed and was a habitual user of sex stimulants. In 1939, one of the appellees, Mrs. Blanche Seay, moved into the Alger home in order to take care of her mother, who required constant nursing attention. She said that it was very difficult to keep servants in the home because of her father's actions, that he refused to eat with the family and would not allow them to enter his room. By 1941 the situation had become such that Mrs. Seay moved her mother to her own home, where she remained until the time of her death. Alger met all his financial obligations and transacted his business. His peculiar eating and living habits could be attributed to the fact that Mrs. Seay was attempting to dispose of his sex stimulants and was following a doctor's directions in putting medicine in his food to counteract them. No doubt Alger became aware of this. Other testimony for the appellees tends to show that Alger was normal and competent to carry on his business until about 1940, but thereafter he was not mentally competent to transact any business in which sex affairs or his love affairs were concerned. In brief, their testimony tended to show that he was insane on the subject of sex. They admit, however, that he was competent when he transferred a

piece of property in California to one of his daughters in 1943 and when he assigned a $1,100 mortgage to Mrs. Seay just six days before his death. Incidentally, these two daughters put up the principal fight for the appellees. The appellees sought also to show that Alger was unduly influenced by Hattie Leach. Evidence relating to his frequent visits to the Leach home and his attentions showered upon the infant, Donna Kay, and certain letters written by Hattie Leach to Alger when he was last confined in the hospital were advanced in support of this contention.

Every member of the Court has reviewed the evidence tending to bear on this point, and all of them are of the opinion that there is no basis whatever for the contention that Alger was unduly influenced by Hattie Leach or anyone else. It is only fair to say, however, that only a majority of the members of the Court is of the opinion that Alger's mental condition was such that he was capable of making a valid will. A brief review of the evidence advanced by the appellants, when considered along with the evidence offered by the appellees, will reveal the basis for the decision of the majority of the members of the Court on the question of Alger's mental capacity to make a will.

We have noted that Alger continued to transact all of his business up until the time of his death, that the codicil to his will was prepared in his own handwriting, and that the appellees admitted he was competent to transact business when he made the two transfers to his children in 1943 and 1944. When Mrs. Seay left the Alger home in 1941, Mr. and Mrs. Kelley moved into his house and remained there until the time of his death. He took two meals daily with the Kelleys. Both of these parties testified that Alger was normal and competent to carry on his business. These parties also witnessed the codicil to the will and they said at that time he appeared normal as usual. They said his room was untidy, and Mr. Kelley frequently visited him there. They said also that he was thrifty and seemed to know how to take care of his business. Clark Courtney, executor of the will, said he accepted the appointment upon Alger's insistence, that they had been business friends and neighbors since 1936 and that he noticed no change in Alger's business ability from that time until his death. Victor Rodman, a neighbor, said he had known Alger for many years,

frequently talked with him, and that he saw no change in his mental clearness and soundness during their long years of friendship. He said also Alger told him that his legitimate children were extravagant, that he never mentioned any of his illicit affairs with other women except about six months before his death he wanted to trade for Rodman's five room home in order to give it to Hattie Leach and Donna Kay. Hattie Leach, who was the mother of four children by her divorced husband, testified that she and Alger planned to marry after his wife died, that he was the father of Donna Kay and that he helped to support Donna Kay and called her his child and often said he would provide for her education after his death. The first two illegitimate children said they frequently exchanged letters with Alger, that he helped support them and referred to them as his own children. They said he told them he would make provision for them after he was gone.

We are well aware of the rule mentioned in Smith v. Ridner, 293 Ky. 66, 168 S. W. 2d 559, to the effect that a wide range of proof is allowed in a proceeding contesting a will. Also, where both undue influence and mental incapacity are relied upon, the proof is not required to be as convincing as where mental incapacity alone is charged. Berryman v. Sidwell, 278 Ky. 713, 129 S. W. 2d 154. Even in the light of these rules, how can it be said that the proof shows Alger did not have mental capacity to make a will in 1942, or to execute a codicil thereto in 1944? It would not do to say that Alger made an unnatural disposition of his estate, because we have noted he thought himself to be the father of the four illegitimate children. His legitimate children were of age, and were apparently able to provide for themselves, and he, no doubt, having no exaggerated regard for the laws of matrimony or common decency, may have felt that the four younger children needed his assistance more than his legitimate children. Furthermore, the estate was not a large one, consisting of approximately $13,000. A man may be as mean as the devil and have virtually unlimited sex capacities, as no doubt Alger had, and still be mentally competent to attend to his business affairs and make a will.

It is the view of the majority of the Court that the appellees failed completely to show that Alger lacked mental capacity to make a will in 1942, or to execute

a codicil thereto in 1944. As we have indicated, all of the members of the Court are of the view that not even a scintilla of evidence was advanced showing undue influence.

Judgment reversed, with directions to set it aside, and for a peremptory to be given in favor of the appellants, in the event there be another trial of the cause and the evidence be the same.