Peggy W. KESLER, Appellant,

v.

Norma SHEHAN, Executor of the Estate of Teddy H. Shehan; Norma Shehan, individually; Paige A. Turner; Jana Shehan; Patrick Shehan and Beverly Shehan, Appellees.

No. 95–SC–910–DG.

Supreme Court of Kentucky.

Nov. 21, 1996.

Homer Parrent, III, A. Whitney Thacker, James Michael Smither, Parrent & Vish, Louisville, for appellant.

John Douglas Hubbard, Regina Rapier Beckman, Challen P. McCoy, Fulton, Hubbard & Hubbard, Bardstown, for appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed a jury verdict and ordered a new trial on grounds that an expert offered an opinion going to the ultimate fact in a will contest case.

The questions presented are whether the Court of Appeals erred in its determination that the expert offered an opinion of the ultimate fact question which was reserved to the jury; whether the Shehan estate opened the door to the testimony about the badges of undue influence by eliciting such testimony from their own expert; whether the Shehan estate failed to preserve the asserted error

by failing to move the court to strike the portion they deemed objectionable; whether the appeal was fatally defective for lack of indispensable parties, and whether the action of the Court of Appeals in granting the petition for rehearing was an abuse of discretion.

Peggy W. Kesler, the daughter of the decedent, brought this will contest action seeking to set aside a will executed by her mother, Margaret M. Shehan, twenty days prior to her death on the grounds of undue influence and unsound mind. After a three day trial, the Nelson Circuit Court jury set aside the will. The Court of Appeals initially rendered a 2 to 1 opinion affirming the jury verdict, but on rehearing, issued a new 2 to 1 opinion reversing and remanding for a new trial. This Court accepted discretionary review.

At the time of her death on July 9, 1991, Margaret M. Shehan had two major assets, a $100,000 certificate of deposit, and a 347–acre farm which had been in her family for several generations and was valued at approximately $600,000 at the time of trial. Peggy W. Kesler contends that in a ten-day period in June, 1991, during which she was ill and also attending to out-of-town business, her brother Teddy H. Shehan summoned a local attorney to prepare a will for Margaret M. Shehan.

On June 14, 1991, the attorney came to the farm and spent between an hour and two hours with Mrs. Shehan. When he arrived, he was presented with a series of notes and instructions prepared by Teddy and his family purporting to reflect what Mrs. Shehan wanted in the will. During the discussion with Mrs. Shehan, the attorney made notes and reviewed materials that had been gathered. From this information, he drafted Mrs. Shehan's will. On June 18, 1991, he returned to Mrs. Shehan's farm to deliver the will. He reviewed the proposed typed will with Mrs. Shehan which she signed in the presence of two witnesses. Mrs. Shehan's death occurred on July 9, 1991.

The attorney never met privately with Margaret M. Shehan, but always in the presence of Teddy Shehan and members of his family. Teddy and his family were also present when the 83–year–old Margaret Shehan, heavily medicated and dying of liver cancer, executed the will which left Peggy the $100,-000 certificate of deposit and Teddy the family farm. The will was admitted to probate and Peggy challenged it.

The Court of Appeals was in error in its conclusion that Randolph Noe offered an opinion on the ultimate fact so as to invade the province of the jury.

At trial, Kesler called the challenged will's scrivener to present the facts surrounding the circumstances of the preparation and execution of the will. On cross-examination, Shehan sought to elicit from him extensive testimony regarding the nature of undue influence, his familiarity with the concept and the presence or absence of the badges of undue influence. Subsequently, Kesler called her own expert, Louisville attorney Randolph Noe, to demonstrate that the scrivener had either not noted or had ignored of badges of undue influence, and that consequently, his conclusions and opinions were not credible.

A careful examination of the testimony by Noe indicates that he never addressed the specific question which was submitted to the jury for decision. The pertinent portion of his testimony states:

PARRENT: Mr. Noe, I'm going to rephrase that question a little bit. Based on materials that you reviewed, did you form an opinion as to whether [the attorney] had followed sufficient safeguards so as to ascertain that the Testatrix, Margaret Shehan, was acting other than under undue influence?

NOE: Yes, I did form an opinion.

PARRENT: Okay.

NOE: Uh, yeah, my opinion is that he, uh, did not uh, uh, conduct the execution and the preparation of the will, uh, with uh, uh, in a circumspect way and, uh, with the safeguards in mind. The reason is, uh, that uh, there were certain factors that were uh, available to him and certainly, uh, should have been noticed by him, uh, with regard to this whole thing involving the preparation and the operation of this will. These things in the law are called badges.

Uh, badges of undue influence, uh, these badges—

HUBBARD: Object, he's just rambling Your Honor. He's not responsive to any question.

JUDGE: Overruled, overruled.

NOE: These badges are indicators that the courts of Kentucky have come up with, uh, to note certain things that would tend to put a person, a lawyer, uh, on notice, uh, that undue influence might be being practiced, uh, and these are called badges, badges of undue influence.

The instructions by the trial judge were not disputed and contained the standard definition of undue influence. Noe did not provide any testimony about those elements. The instructions did not contain any reference to the badges of undue influence, nor did they direct the jury to make findings on their presence or absence. The testimony by Noe did not relate to any matter on which the jury was required to decide.

Noe did not state that undue influence was actually present here. He merely testified that the attorney should have been on notice to do more to assure himself about the voluntariness of the client's action. Under the circumstances presented here, the jury was entitled to consider that the attorney had overlooked or ignored undue influence and therefore had failed to do enough to form a credible opinion that his client was free from undue influence.

We believe that reliance by the Court of Appeals on *Morton's Administrator v. Kentucky–Tennessee Light & Power Company*, 282 Ky. 174, 138 S.W.2d 345 (1940), is misplaced because that case is distinguishable. *Morton's, supra*, noted that a witness cannot be allowed to express an opinion upon the exact question or matter directly in issue which the jury are required to decide. Here, Noe did not give an opinion on the exact question directly before the jury. His testimony was framed only in terms of possibility and was not a direct or unqualified assertion. In addition there are significant differences between *Morton's*, a negligence case, and a will contest in which both lay and expert witnesses are entitled to give opinions about the mental capacity of a testator. *Cf. Trust Dept. of First Nat'l Bank v. Heflin*, Ky., 426 S.W.2d 128 (1968) and *Smith v. Ridner*, 293 Ky. 66, 168 S.W.2d 559 (1943). *Morton's* is not a controlling precedent.

Noe did not provide any improper opinion or invade the province of the jury. He did not answer any question which the instructions called on the jury to decide but he did inform the jury about the duties of an attorney to be careful of the badges of undue influence. He further indicated that the attorney should have, at a minimum, spoken on one occasion privately with the decedent outside the hearing and presence of interested parties who had called him to her residence in order to make the will. The decision of the trial court was correct in permitting such testimony and the Court of Appeals was in error in ordering a new trial.

■ Actually, it was Shehan who opened the door to the testimony about the badges of undue influence by seeking such testimony from his own expert. Under the circumstances here, where Kesler was merely attempting to rebut the attorney's testimony, Shehan cannot complain. *See Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973) and Lawson, *Kentucky Evidence Handbook*, 3d edition § 1.10(IV).

■ Moreover, Shehan did not properly preserve the claimed error in the Noe testimony because he failed to move the trial court to strike the portion he considered improper. The real question is what is required to properly preserve the argued point for appellate review. Error may not be predicated on a ruling which admits or excludes evidence unless a substantial right of the party is affected and is timely or seeks to strike a matter from the record. KRE 103(a)(1). Here the testimony was proper for one purpose and the failure to seek an admonition or to strike the offending material did not properly preserve the claimed error for appellate review. The Court of Appeals could not review an issue which was not raised in the trial court or decided by the trial judge. Claimed error must be properly preserved. The trial judge had no opportunity to rule on the challenge to the Noe testimony on the basis that it went to the

 

ultimate fact. The issue was not properly preserved for appellate review. *Cf. Regional Jail Authority v. Tackett*, Ky., 770 S.W.2d 225 (1989).

■ The appeal to the Court of Appeals by Shehan was defective for the lack of indispensable parties. Five individuals not named on direct appeal were beneficiaries under the will and some were adversely affected by the judgment. Under the language of the purported will of Margaret Shehan, twelve individuals were not only specific legatees as to certain assets, but also automatically included as residual legatees. Five of the beneficiaries were omitted from the notice of appeal filed in this case. These individuals each received a specific bequest pursuant to the will and each also had a one-twelfth interest in the residue of the estate.

*Land v. Salem Bank*, 279 Ky. 449, 130 S.W.2d 818 (1939), holds that for purposes of appeal, a person is a necessary party if the person would be a necessary party for further proceedings in the circuit court if the judgment were reversed. Accordingly, if the five omitted beneficiaries would be necessary parties in the event of a reversal of the jury verdict here, they were necessary parties to the appeal.

The exceptions noted in *West v. Goldstein*, Ky., 830 S.W.2d 379 (1992), do not apply in this case. *West, supra*, held that certain specific legatees, as to whom all claims were waived by the will contestant and who were released from any liability by reason of the receipt of their bequest, were not necessary parties in a will contest appeal. *West* modified, but did not specifically overrule, a series of earlier cases which had held that all beneficiaries of a will were necessary parties in a will contest. *See Russell v. Grumbley's Extr.*, 290 Ky. 57, 160 S.W.2d 321 (1942); *McComas v. Hull*, 274 Ky. 192, 118 S.W.2d 540 (1938); *Scott v. Roy*, 144 Ky. 99, 137 S.W. 858 (1911) and *Security Trust v. Swope*, 274 Ky. 99, 118 S.W.2d 200 (1938).

This case differs from *West* because the beneficiaries who were omitted are residual legatees rather than specific legatees. Thus, their ultimate interest in the estate is undeterminable until this action and all related expenses, such as tax adjustments, debts and fees have been determined and paid. In addition, the party challenging the will in this case has not waived any claim against the omitted parties and has not released them or acquiesced in their receipt of any benefit under the will. Consequently, *West* is factually distinguishable.

*Blackburn v. Blackburn*, Ky., 810 S.W.2d 55 (1991) is not applicable to this situation because in that case the omitted parties were at least named in the caption and preamble statement.

The issue regarding the alleged abuse of discretion by the Court of Appeals in granting the first Petition for Rehearing is moot in light of our decision in this case.

The decision of the trial judge to submit the issue of undue influence and lack of mental capacity to the jury was correct. There was no error or abuse of discretion by the trial judge in instructing the jury or in refusing to strike the testimony of the expert witness Noe.

The decision of the Court of Appeals is reversed and the judgment and jury verdict is reinstated.

All concur.