## McCREADY v. SOUTHERN PAC. CO.

Circuit Court of Appeals, Ninth Circuit.
May 28, 1928.

Rehearing Denied July 2, 1928.

No. 5270.

**1. Electricity ⟜19(6)—Owner's negligence in maintaining charged wires in unfinished building held for jury, as respected injury to employee of contractor coming in contact therewith.**

In action to recover damages for personal injuries sustained by employee of contractor coming into contact with charged electric wires placed in building before its completion by owner, negligence of owner in maintaining wires in such condition *held* for jury.

**2. Negligence ⟜32(1)—Owner, as respects invitees, is under duty to exercise reasonable and ordinary care to see that premises are free from danger.**

In a case of invitees in a strict technical sense, as where persons come upon property for business or pleasure in response to a general implied invitation of owner or occupier, the latter is under a duty to exercise reasonable and ordinary care to see that premises are free from danger.

**3. Negligence ⟜32(2)—Owner has duty to refrain from subjecting to unnecessary peril employee of contractor working on unfinished building.**

Where employee for contractor constructing building was by virtue of his employment in privity with contractor, with right to be and to work in and about unfinished building, owner thereof had duty to refrain from subjecting him to unnecessary peril to as great extent as duty in that respect toward contractor.

**4. Negligence ⟜32(1)—Owner has duty to refrain from affirmatively creating danger to workman constructing building.**

Owner of building, though being under no affirmative duty to keep premises safe for workman during its construction, nevertheless has duty to refrain from affirmatively creating a danger.

**5. Electricity ⟜19(12)—Employee of contractor held not negligent as matter of law in undertaking to remove scaffolding near electric wires maintained by owner in unfinished building.**

Employee of contractor who was injured when coming in contact with charged electric wires maintained in unfinished building by owner, when attempting to remove scaffolding, *held* not negligent as a matter of law in undertaking work, though he had knowledge of proximity of wires and realized that operation was attended with a measure of peril.

**6. Negligence ⟜66(1)—Recovery cannot be had for injury to one voluntarily assuming position of danger, unless there is reason of necessity or propriety.**

One who voluntarily assumes a position of danger, the hazard of which he understands and appreciates, cannot recover for resulting injury unless there is some reason of necessity or propriety justifying him in so doing.

26 F.(2d)—36½

**7. Negligence ⟜66(2), 71—Recovery for injury is not barred if injured person might reasonably expect to avoid danger or where way used was only way.**

Where, by the exercise of care proportionate to danger, one might reasonably expect to avoid the danger, or if reasonably prudent men might differ as to propriety of encountering it, or where the way used is the only way, a recovery for injury sustained is not barred.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Edward J. Henning, Judge.

Action by L. T. McCready against the Southern Pacific Company. Judgment of involuntary nonsuit, and plaintiff brings error. Reversed with directions.

Bertrand J. Wellman, of Los Angeles, Cal., for plaintiff in error.

W. I. Gilbert, of Los Angeles, Cal., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Plaintiff brought this action to recover damages for personal injuries, and, from a judgment of involuntary nonsuit at the close of his case, he appeals.

At the time of his injury, he was employed as a carpenter by the C. A. Fellows Construction Company in the erection of a new shop building at Los Angeles for the defendant railroad company; the construction company being an independent contractor. The building was to be 75 feet wide and 480 feet long, and, though to be a single rectangular structure when finished, it was constructed in two units. The walls were of brick, with large window spaces. About 25 feet above the floor, and 6 or 8 feet from each side wall was an I-beam extending the full length of the building. These beams carried rails upon which traveled a heavy crane beam extending from one I-beam to the other; the crane being designed for the moving of ponderous materials and machinery, the power therefor being electrically supplied.

At the time of the accident, the westerly half of the structure was finished, and had been turned over to the railroad company. The easterly half was nearing completion, but considerable work still remained to be done. The plaintiff and other carpenters were, under their employers' directions, engaged in removing interior scaffolding which had been erected along the side walls of the unfinished unit for the use of brick-

layers and other workmen in constructing the walls, which were then complete. The scaffolding consisted of long 2x6 timbers, set upright against the wall at short intervals, and crosspieces attached thereto at one end and at the other fastened to the I-beam by means of cleats; and upon these crosspieces rested a floor of heavy loose boards. The evidence tends to show that the defendant, acting directly and not through the contractor, had installed along and in close proximity to the I-beams, by means of brackets or arms attached thereto, electric wires for the transmission of current to operate the crane. For some time there was no connection between these lines in the finished unit which was in use, and those in the unfinished unit, but two or three days prior to the accident connection had been made, so that, when the current was turned on, it passed through the entire length of the building, including the unfinished portion. No reason is disclosed by the record for making the connection before the easterly portion was finished and turned over to the owner. The defendant put up conspicuous notices to the effect that the wires carried a current and were dangerous.

Desiring to remove the scaffolding, the contractor's foreman notified representatives of the defendant and sought to have the current temporarily cut off, but his requests were refused; and finally, selecting plaintiff and others of the more experienced workmen, he assigned to them the task of taking down the scaffolding, at the same time giving them appropriate warnings that they should exercise care to avoid injury from the wires. In the course of this work, the plaintiff, while standing on one of the I-beams and holding one end of a crosspiece, which he had just detached from the I-beam, to keep the other end, still attached to the upright, from falling against the wall windows, was thrown from his balance by a sudden and unexpected slipping of the attached upright, and falling came into contact with the trolley wires. As a result he suffered the loss of an arm, together with other injuries.

By its answer defendant denied negligence and affirmatively pleaded contributory negligence and assumption of risk; but, prior to the second trial of the case, the one here involved, it dismissed the latter plea. The questions for consideration therefore are whether the facts as above recited make a prima facie case of actionable negligence, and, if so, whether they disclose such contributory negligence as in law bars recovery.

[1] Classifying plaintiff's status on the premises as that of a mere invitee, defendant contends that its only duty was to notify him that the wires were dangerous. In the brief it thus states its position: "The premises upon which the accident occurred and the charged trolley wire were the private and exclusive property of the defendant. It had the right, as against those invited thereon and licensees and trespassers, to maintain the property in such condition, dangerous or otherwise, as it saw fit, and to invitees it owed only the duty of disclosing such dangers as were not open and patent, when the invitee might choose to enter or refuse to enter, as he saw fit."

[2, 3] As applied to the conditions here, we can assent to neither such an unqualified statement of the law nor to the assumption of facts. We do not recognize it to be a universal rule that an owner who invites the public to come upon his premises for business or pleasure may, in the absence of reasonable necessity, maintain thereon dangerous agencies, as wires charged with deadly currents of electricity, in such places as to endanger life and limb, and escape liability by maintaining danger signals or otherwise advising the public. Owing to inadvertence, momentary forgetfulness, a misstep, or an unexpected emergency, the daily path of a citizen is, at best, subject to many hazards necessarily incident to the legitimate employment of forces and agencies which contribute to our needs or convenience, and there should be no disposition to approve their multiplication by the maintenance of unnecessary pitfalls, where red flags will at most only reduce, but not remove, the peril. What reasons, if any, the defendant here may have had for connecting up the lines and sending the deadly current through the unfinished unit where men were at work, we are not advised, but, as we have the record, the unexplained refusal to shut off the power until the scaffolding could be removed imports little less than a wanton disregard for human life. In a case of invitees in a strict technical sense, as where persons come upon property for business or pleasure in response to a general implied invitation of the owner or occupier, the latter is under a duty to exercise reasonable and ordinary care to see that the premises are free from danger. Thompson on Negligence, vol. 1, § 968. But here we do not have the case of a mere invitee in the ordinary sense. As we understand, it is not disputed that, being by virtue of his employment in privity with the contractor, plaintiff's right to be and to work

in and about the unfinished unit was of equal dignity to that of his employer, and that the duty of the defendant to refrain from subjecting him to unnecessary peril was as great at least as was its duty in that respect toward the contractor. Thompson on Negligence, supra, § 979. In a sense, possibly, the contractor and its employees had the status of invitees, but they were not on the premises for their own pleasure, nor were they in a position to accept or decline the so-called invitation at will. Though the construction contract is not as a whole in evidence, it is to be inferred that under it the contractor had the obligation to complete the building, and hence, at the time of the accident, it was doing only what under the terms of the contract defendant was requiring it to do. In the absence of a showing to the contrary, it is but natural to assume that, for the purpose of constructing the building, the owner had delivered to the contractor possession of the site, retaining only the right to go upon the premises for specific purposes, such as inspection, and to see that the work was being carried on pursuant to the terms of the contract; and presumably this right of possession, measurably exclusive, would continue until the work was finished and the structure turned over to the owner.

[4] While the defendant was under no affirmative duty to keep the premises safe for the workmen, it was under the duty to refrain from actively creating a danger. Although it may have had the exclusive right to the possession and use of the finished unit, it would hardly be contended that it could therein rightfully carry on an operation, as, for example, blasting, as the result of which missiles would be thrown with great force into the unfinished unit to the peril of the workmen therein. Such conduct would clearly have constituted a nuisance, and in sending the dangerous current into the unfinished unit it infringed upon the rights of the contractor and its employees in substantially the same manner; the sending of the current was no less a nuisance than would have been the discharge of rocks or other missiles. Upon the record it is clear that the primary question of defendant's negligence was one for the jury.

[5-7] Defendant does not very clearly define its position in respect to the defense of contributory negligence. There is no room at all for a contention that plaintiff was immediately prior to the accident conducting himself in a careless manner; nor, in view of the conditions as we have described them, was it negligence per se for him to undertake the work, though he had knowledge of the proximity of the trolley wires and realized that the operation was attended with a measure of peril. "Thus one who voluntarily assumes a position of danger, the hazard of which he understands and appreciates, cannot recover for resulting injury, unless there is some reason of necessity or propriety to justify him in so doing. If by the exercise of care proportionate to the danger one might reasonably expect to avoid the danger, or if reasonably prudent men might differ as to the propriety of encountering it, or where the way used is the only way, a recovery is not barred." 29 Cyc. 519. See, also, Narwedel v. Cook, 154 Mass. 235, 28 N. E. 140; Nave v. Flack, 90 Ind. 205, 212, 46 Am. Rep. 205; Newport News, etc., v. Bradford, 100 Va. 231, 40 S. E. 900; Charlottesville v. Stratton's Adm'r, 102 Va. 95, 45 S. E. 737.

Under the circumstances here shown, we do not think it can properly be said, as a matter of law, that the plaintiff was careless or imprudent in undertaking the work. Had it not been for the unforeseen slipping of the upright, he would probably have escaped injury from the peril.

Judgment reversed, with directions to grant a new trial.