## Taustine's Ex'r v. B. & B. Novelty Co.

October 7, 1947.

Henry L. Brooks, Judge.

Davis, Boehl, Viser & Marcus for appellant.

Lawrence S. Grauman for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

During the latter part of July, 1945, the Cavalier Cravat Company, rented the third floor of a four story building in Louisville from the B. & B. Novelty Company. Mr. Joseph Taustine, age 52, was president of the Cravat Company. On August 13, 1945, Mr. Taustine met his death when he stepped into an elevator shaft on the third floor of the building and fell to the basement. This action was instituted by the appellant to recover damages for the alleged wrongful death of the deceased. The appeal is from a directed judgment given in favor of the Novelty Company at the conclusion of the evidence offered by the appellant.

The elevator was used by the employees of the Cravat Company and by the Novelty Company. It was a hand-controlled, electric freight and passenger elevator which was installed in 1920. Apparently, it did not meet the requirements of the 1926 Louisville city ordinance applying to elevators, but it was approved by the chief elevator inspector for the City in 1945. The reason for the approval is set forth in the following answer of the inspector:

"A. Yes, sir; because there could not be no changes made on it because the elevator was installed before this Code went into effect. It was installed in 1920, before the Code came out."

Mr. Taustine sometimes used the elevator in going to and from the premises of the Cravat Company, but at other times he used the steps. On the day he met his death he walked up the stairs from the first to the third floor upon his return from lunch about 2:00 p. m. He placed a box upon his desk and then said in the presence of Mrs. Mary McKinney, a bookkeeper, that he had forgotten to put up the express sign. He then walked toward the elevator, the door of which cut him off from Mrs. McKinney's view. The only eyewitness to the accident was Mrs. Bessie Corbett, a part time worker

for the Cravat Company, who was going home about the time Mr. Taustine went toward the elevator. She said that she decided to follow him so she could ride down with him. She described the accident in the following manner:

"A. I saw him go from where the office was—I guess I was about thirty feet from the elevator—I saw him go over to the elevator, and put his left hand against the facing, and he raised the door with his right hand, and he looked towards the office and said something—I did not hear what he said; he smiled and turned and just stepped off in there." Mrs. Corbett said that she did not know whether the elevator was at the third floor at the time Mr. Taustine raised the door. As a matter of fact, the elevator was at the fourth floor at that time.

The appellant insists that the elevator was not of a modern type containing various safety devices and locks, and that there was insufficient lighting at the elevator entrance. The nearest light seems to have been some six or eight feet away. However, we fail to see merit in either contention. While the light may not have been as bright as it could have been, it was under the control of the Cravat Company since it paid the bills for the lights on the third floor; and, at least, it was sufficient for Mrs. Corbett to follow Mr. Taustine's actions. We have noted that the elevator had been approved by the city elevator inspector, but, even assuming that it was defective, we think it was Mr. Taustine's own negligence which brought about his death. He was familiar with the type of elevator in use. He had used it, and, according to Mrs. Corbett's statement, he went to it, raised the door, and, after turning toward his office, stepped into the shaft. When he raised the door he was facing the elevator shaft and had ample opportunity to determine whether or not the elevator was at the third floor. Under the circumstances, we think he failed to exercise proper care for his own safety.

The rulings of this Court are numerous to the effect that one must exercise ordinary care for his own safety and may not walk blindly into dangers which are obvious to him, or that could be anticipated by a person of ordinary prudence. In the recent case of Price v. T. P.

Taylor & Co., 302 Ky. 736, 196 S. W. 2d 312, a majority of this Court held that a lady, who went into a drug store to make a purchase at a soda fountain and sat down on the stem of a stool from which the seat had been removed, was guilty of contributory negligence as a matter of law, since she gave only a casual glance at the stools before sitting down. In the Price Case the Case of Peerless Mfg. Corporation v. Davenport, 281 Ky. 654, 136 S. W. 2d 779, was cited, among other cases. In the Davenport case it was held that a business invitee, who fell from a platform in front of the defendant's factory, was not entitled to a recovery because it was established that he knew the condition of the platform from having used it in entering the factory and failed to follow the instructions of one of the defendant's employees as to the manner of getting off the platform. See also Seelbach, Inc., v. Mellman, 293 Ky. 790, 170 S. W. 2d 18.

For the reasons given we think the judgment should be and it is affirmed.