TROUTMAN v. INTERNATIONAL HARVESTER CO. (STRUCK CONST. CO., third-party defendant).

No. 1376.

United States District Court  
W. D. Kentucky, at Louisville.  
April 10, 1948.

Cohen & Fisher and Lawrence S. Grauman, all of Louisville, Ky., for plaintiff.

Hubert T. Willis and Bullitt & Middleton, all of Louisville, Ky., for International Harvester.

Wm. F. Clarke, of Louisville, Ky., for Struck Const. Co.

SHELBOURNE, Chief Judge.

This action is now before this Court upon two motions, both filed by defendant and third party plaintiff, International Harvester Company and third party defendant Struck Construction Company.

The first motion is to set aside the verdict of the Jury and to enter a judgment in favor of the defendant International Harvester Company, a procedure provided by Rule 50(b) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A.

The second motion is to set aside the verdict of the Jury and the judgment entered thereon and to grant a new trial.

The action was filed July 7, 1947 by Nellie I. Troutman, Administratrix of the estate of her deceased husband Phillip A. Troutman, who died June 12, 1947, as the result of injuries received while employed as a carpenter by the Struck Construction Company in the construction of a building comprising part of the plant of the International Harvester Company, located on Crittenden Drive near Louisville, Kentucky.

The complaint, as amended, alleges that decedent was assisting in plumbing a door jamb and was working twenty-six feet above ground when he came in contact with an angle iron charged with a heavy voltage of electricity, which contact caused decedent to fall and receive injuries which immediately caused his death.

The negligence alleged in the complaint, as amended, is (a) failure on the part of the defendant to place a guard around the angle iron charged with electricity (b) failure to place a warning sign to indicate the danger (c) failure to furnish decedent a safe place in which to work.

It is stated that decedent did not know and could not, by ordinary care have known, of the alleged dangerous condition and that defendant did know or could have known the danger, by the exercise of ordinary care, and that defendant failed to warn decedent of the danger incident to doing the work at the place where he was directed by his foreman to go at the time he received his injuries.

A third party complaint was filed by the defendant International Harvester Company against the Struck Construction Company on October 17, 1947, in which it was alleged that the Construction Company was engaged by contract to do certain construction work on the Harvester Company's plant and that under and by virtue of the terms of the contract the former agreed to protect and save harmless the Harvester Company from any and all claims, damages, demands, etc. for injury, including death, to any person including servants and employees of the parties thereto.

Struck Construction Company filed its answer to the third party complaint.

The answer of the Harvester Company to the petition of the plaintiff admitted the capacity of the plaintiff to sue and the corporate entity of the defendant Harvester Company; otherwise denying all the allegations of the petition and by an amended answer filed November 19, 1947, alleged that at the time of his injury, decedent Troutman, by his own negligence so contributed to his injuries and death that but for his negligence, the accident would not have occurred.

By a second amendment filed December 4, 1947, made the additional defense of assumed risk on the part of Troutman; alleged that the risk of electrical shock and fall which was claimed as the cause of his death, were among the risks assumed by the decedent in entering the employment of the Construction Company.

Upon the issues so made by the pleadings, the case came to trial to a Jury on December 15, 1947. The Jury returned a verdict

for the plaintiff in the sum of $17,000, for which judgment was entered.

The Harvester Company seasonably filed its motion to set aside the verdict and the judgment entered thereon; to enter judgment for the defendant in accordance with its motion for a directed verdict made at the close of the introduction of all the evidence upon the trial.

In support of its motion, it was alleged that there was no evidence of negligence on the part of defendant International Harvester Company and that the evidence in the case showed conclusively that the injuries sustained by the decedent were the proximate result of his own negligence and that the verdict of the Jury was in direct violation of the instructions of the Court.

The reasons urged in the motion for a new trial were eleven in number, as follows:

1. The verdict is contrary to law.

2. There was no substantial evidence that the injury or death of decedent was the proximate result of any negligence of the International Harvester Company.

3. That the evidence conclusively showed that the death of decedent was the proximate result of his own negligence.

4. Error of the Court in permitting plaintiff to introduce certain evidence over defendants' objections.

5. Error of the Court in refusing to admit certain evidence offered by defendant.

6. Error of the Court in refusing to direct a verdict for the defendant.

7. Error of the Court in instructing the Jury that it was the duty of the Harvester Company to furnish decedent a reasonably safe place in which to work.

8. That the verdict is excessive.

9. That the verdict was against the weight of the evidence, both with respect to the absence of negligence on the part of the Harvester Company and with respect to the contributory negligence of decedent.

10. Newly discovered evidence.

11. Because the verdict of the Jury was arrived at by each member writing down on a piece of paper the amount which he or she believed the verdict should be and divided the total by twelve, which last named amount became the verdict of the Jury.

Both counsel for the Harvester Company and for Struck Construction Company vigorously and ably contend that the motion filed pursuant to Rule 50(b) of the Rules should be sustained.

In support of the motion for a new trial they have limited their discussion to four of the eleven reasons assigned in the motion—that is—(1) The quotient verdict, (2) Newly discovered evidence, (3) The verdict was contrary to the evidence, and lastly, the Jury verdict was contrary to the instructions.

The decedent, Troutman, at the time of his death was forty-seven years old and had been employed by the Construction Company as a carpenter, largely in the construction of wooden forms in which the concrete was poured for foundations at the plant of the Harvester Company. The buildings were of steel construction and in the particular building where the accident occurred it was discovered that a door jamb was out of plumb and there had been some controversy between the steel construction workers and Struck's foreman as to whether the door jamb being out of plumb was the fault of Struck or the steel constructors.

Admittedly, before the building was completed, there had been installed equipment consisting of rails supported by angle irons which were charged with 440 volts of electricity. Upon these rails, there was operated an overhead crane. There is some dispute in the testimony as to whether warning signs were attached to the rails.

The witness Lee Lewis testified that no signs were up when the accident occurred.

George Hite, member of the carpentry crew, testified that when Troutman was directed to climb up the steel frame work at the end of the building to the top of the door jamb to be plumbed, that he said to Troutman "It is hot as hell up there Dutch." The witness E. W. Shilt, an employee of the Steel Contractor, Homer Rosser, Superintendent in charge of the steel construction and Robert Nalley, all

warned Troutman either before he left the ground to climb up the frame work of the building or while he was up there that "those rails are hot; they will reach out and grab you." The evidence is that by the term "hot", they were referring to the charge of electricity in the rails and angle irons.

The testimony is not clear as to exactly how Troutman came in contact with the current of electricity, as no one seems to have been observing him at the exact moment of his contact, but it is undisputed that he did come in contact with the angle iron or rail and was knocked from a point from twenty to twenty-six feet high to the ground, sustaining injuries which caused his death.

■ Counsel for the parties agree that under the rule of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the law, as announced by the Kentucky Court of Appeals, controls. See also Detroit, Toledo & Ironton Railroad Company v. Yeley, 6 Cir., 165 F.2d 375.

■ It therefore may be stated that the defenses of contributory negligence and assumed risk under the Kentucky law are, each, complete defenses.

In the case of Porter et al. v. Cornett, 306 Ky. 25, 29, 206 S.W.2d 83, 85, the Court of Appeals said: "The doctrine of 'assumption of risk' historically arose under the general law of master and servant, and has for the most part been deemed a matter of contract. In negligence cases the same concept has been generally accepted as contributory negligence. In their legal effect, the two doctrines are identical. They deny the right of recovery where the injured person with knowledge of a dangerous situation voluntarily places himself in a position where he takes the chance of being hurt. * * *"

Quoting from the case of Sutherland v. Davis, 286 Ky. 743, 151 S.W.2d 1021, the Court continued—"The assumption of risk of a danger amounts to contributory negligence so as to bar recovery when the injured person is aware of the conditions which create the danger and in addition thereto appreciates in his own mind the

danger attendant upon such conditions. * * * Where the danger attendant upon the conditions is a matter of common knowledge it will be conclusively presumed that the injured person appreciated the danger."

In the case of Green River Rural Electric Co-op. Corporation v. Blandford, 306 Ky. 125, 128, 206 S.W.2d 475, 477, the Court of Appeals of Kentucky said: "There is no dispute as to the high degree of duty on the part of one maintaining a high voltage electric line. About the only thing certainly known about electricity is its highly dangerous character and that the greater the voltage the greater the danger. So the duty as often declared is, in short, to exercise the utmost care to prevent injury, which, however, is but to say that ordinary care in dealing with so dangerous a force is the highest degree when put into practice."

Continuing in the Green River case, the Court referred to its former opinion in Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345, and reaffirmed its holding in the latter case—"* * * One of the factors to be considered in determining the existence or absence of negligence is reasonable contemplation of contract or injury to a person as a result of the condition created or permitted by the defendant. The test is whether it could have been reasonably foreseen or anticipated as likely to appear, taking into account the company's own past experience and the experience and practice of others in similar conditions. It is not that a particular act, which may have been unusual, could have been apprehended, but whether people would come in dangerous proximity and might be expected to do any reasonable thing while there from which injury would result."

While the evidence in this case is to the effect that the building where the injury occurred had not been completed, the Harvester Company had moved into the building and was using it while in construction. A few days before the date of the accident, the current in the crane apparatus had been shut off at the request of the steel construction contractors.

■ The uncompleted condition of the building was notice to the Harvester

Company that workmen would be engaged in and about the building until the contracts for its construction had been completed. With the building in this condition, knowledge must be imputed to the Harvester Company that workmen would be engaged in the discharge of their duties in and about that portion of the building where the rails, angle irons, and crane equipment charged with 440 volts of electricity were situated. The employees were therefore licensees and invitees and the Harvester Company owed to them the duty of exercising reasonable and ordinary care to see that the premises were free from danger, or in other words, to furnish the employees a reasonably safe place in which to perform their work. McCready v. Southern Pacific Company, 9 Cir., 26 F.2d 569.

Defendants do not contend seriously upon their motion that there was not sufficient evidence on the part of the plaintiff to justify a submission of the case to the Jury, but are very earnest in their contention that the decedent was guilty of contributory negligence so as to preclude any recovery; contending that the evidence as to contributory negligence is so overwhelming as to leave no room for doubt, citing many cases in support of their contention, some of which are—Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Atchison, Topeka & Santa Fe Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Troutman v. Mutual Life Insurance Co. of N. Y., 6 Cir., 125 F.2d 769; International Harvester Company v. Langermann, 8 Cir., 262 F. 498.

They insist that that doctrine is peculiarly applicable in this case because of the rule announced by the Kentucky Court of Appeals in such cases as City of Owensboro v. York's Adm'r, 117 Ky. 294, 77 S.W. 1130; Citizens' Telephone Company v. Westcott's Adm'x, 124 Ky. 684, 99 S.W. 1153; Capital Gas & Electric Light Co. v. Davis, 138 Ky. 628, 128 S.W. 1062; City of Owensboro v. Winfrey, 191 Ky. 106, 229 S.W. 135 and Kentucky & West Virginia Power Co. v. Brown's Adm'x, 281 Ky. 133, 135 S.W.2d 70.

They emphasize the warnings given Troutman before and at the time he endeavored to assist in plumbing the door jamb and contend that this case comes within the rule announced by the Kentucky Court of Appeals in cases involving injury by electricity, that a person, knowing that an appliance is charged with electricity, must not trifle with the appliance and if he voluntarily touches it and is killed or receives serious injury, it cannot be said that his conduct was other than negligent so as to preclude recovery. They call particular attention to the decision of the Sixth Circuit Court of Appeals in the case of Monongahela West Penn Public Service Company v. McNutt, 13 F.2d 846, 847.

The Sixth Circuit Court of Appeals, in the case of Scott et al. v. United States, 161 F.2d 1009, 1012, laid down this rule with respect to a Trial Judge directing a verdict—

"More than 25 years ago, this Court said, in Begert v. Payne, 6 Cir., 274 F. 784, 787, 788 'It is a commonplace that, upon a motion by a defendant for instructed verdict, it is the duty of the trial judge to give the plaintiff the benefit of every fair inference which might reasonably be drawn by the jury from the evidence, only guided by sound processes of reasoning and applicable principles of law. The credibility of witnesses is peculiarly for the jury. * * * *A verdict cannot properly be directed for defendant merely because the trial judge feels that, should the jury find in the plaintiff's favor, he would regard it his duty, in the exercise of a sound judicial discretion, to set the verdict aside.*

" 'The test is whether there is such an utter absence of substantial evidence as to make it his duty, as matter of law, to set the verdict aside independently of the exercise of discretion, and without reference to how greatly the court may think the conflict in testimony to preponderate in favor of defendant.' "

Plaintiff relies upon the case of McCready v. Southern Pacific Co., supra, and the facts in that case are analogous to those in the case at bar. In that case, the plaintiff was employed as a carpenter by a contractor engaged by the Southern Pacific Company in the erection of a shop building at Los Angeles. The contractor,

there, as here, was an independent contractor. Prior to completion of the building, the railroad company· installed a crane operated electrically. In removing some of the scaffolding, McCready came in contact with the apparatus carrying the current of electricity and suffered severe injuries. The company there denied negligence and relied upon the defenses of contributory· negligence and assumption of risk. The Court said [26 F.2d 570]— "We do not recognize it to be a universal rule that an owner who invites the public to come upon his premises for business or pleasure may, in the absence of reasonable necessity, maintain thereon dangerous agencies, as wires charged with deadly currents of electricity, in such places as to endanger life and limb, and escape liability *by maintaining danger signals or otherwise advising the public*. * * * What reasons, if any, the defendant here may have had for connecting up the lines and sending the deadly current through the unfinished unit where men were at work, we are not advised, but, as we have the record, the unexplained refusal to shut off the power until the scaffolding could be removed imports little less than a wanton disregard for human life. * * * While the defendant was under no affirmative duty to keep the premises safe for the workmen, it was under the duty to refrain from actively creating a danger." (Italics added.)

The sending of the current through the wires was compared by the Court to a blasting operation carried on by the owner of the building, such as to throw missiles with great force into the portion of the building where workmen might be expected to be working, and the Court said that the sending of the current through the portion of the building where the workmen were engaged in their employment infringed upon the rights of the employees in the same manner as would the blasting operation.

In that case, the workmen had knowledge of the proximity of the electric wires and realized that the place where he was engaged in his work was "attended with a measure of peril." The action of the Trial Court, in directing a verdict, was disapproved and the judgment so entered was reversed, the Court holding that plaintiff, as a matter of law, was not precluded by any negligence on his part; that the knowledge on his part of the presence and dangers of the charged wires was not sufficient to preclude recovery.

Counsel for Struck Construction Company have referred to the cases of Taustine's Executor v. B. & B. Novelty Co., 305 Ky. 514, 204 S.W.2d 938, and Price v. T. P. Taylor Co., 302 Ky. 736, 196 S.W. 2d 312.

In the Taustine case, decedent, a man fifty-two years of age, in attempting to go from his office on the third floor of a four-story building in Louisville, by using the elevator, met his death when he opened the elevator door and stepped into the shaft, thereby falling, to the basement. The Court of Appeals, in holding that his estate could not recover said [305 Ky. 514, 204 S.W.2d 939]—"When he raised the door he was facing the elevator shaft and had ample opportunity to determine whether or not the elevator was at the third floor. Under the circumstances, we think he failed to exercise proper care for his own safety."

■ To my mind, there is a difference between a person coming in contact with an apparatus charged with 440 volts of electricity at a point where he is rightfully engaged in the discharge of his duties and a person attempting to enter an elevator and omitting to observe that the elevator is not at the floor level where he is attempting to enter. The elevator was conspicuously absent.

The steel work of the building of the Harvester Company and the steel work of the iron rails upon which the crane operated were of similar material and were painted the same color.

There has been no effort in this case to excuse the failure on the part of the Harvester Company to disconnect the current and thereby leave the portion of the building where the work was known to be in progress, free from the hidden danger which the high voltage created.

The motion to set aside the verdict of the Jury and the judgment entered thereon

and to enter a judgment for the defendants is overruled.

In defendants' contention on the motion for a new trial, there are two troublesome questions.

Counsel does not contend that under the rule laid down by the Supreme Court in the case of McDonald and United States Fidelity and Guaranty Company v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300, a losing party, in order to secure a new trial, may use the testimony of a juror to impeach the verdict by showing that the amount of the verdict represented the quotient of the sum total of the Juror's estimates, divided by twelve. However, their contention that they should have a new trial because of newly discovered evidence gives grounds for concern.

There was nothing in the evidence to indicate that the decedent Troutman had had any experience in working around an electrical crane and stress was laid upon the fact that he was not acquainted with such equipment and its dangers in the closing argument to the Jury by Counsel for plaintiff. It appears by affidavits, filed in support of the motion for a new trial that Troutman worked for fully a year, operating electrical equipment and work in the same room with an overhead traveling crane of the same general type as that in use at the Harvester plant at the time of his death.

The other contention is that the verdict of the Jury is contrary to the instructions, in that the Jury was instructed that if they should believe from the evidence that Troutman was informed of the hot or charged electric current and its presence there where the work was to be done and warned that the place where he was working was dangerous and that he failed to observe that warning, then the law was for the defendant, notwithstanding the Jury might believe the defendant, Harvester Company, to have been negligent in failing to provide decedent a reasonably safe place to work.

There is but one explanation sufficient to meet this last contention and that it; either that the expressions of the workmen in warning Troutman could not reasonably have been interpreted by him to refer to the high voltage irons or rails or that he did observe the warnings, but nevertheless came in contact with the rails because of their close proximity to the place where he was working.

I feel that the facts were as fully presented as could be anticipated upon another trial and that the decision of the Jury, that the death of Troutman was due to the failure on the part of the Harvester Company to remove a hidden danger from the place where they knew the work would be done by shutting off the current of electricity during the short interval of time when the carpenters' gang would be engaged in working in and about that portion of the building where they had not customarily worked, is a conclusion for which there was substantial evidence.

The motion for a new trial is overruled.