## Morton's Adm'r v. Kentucky-Tennessee Light & Power Co.

March 5, 1940.

Porter Sims, Judge.

Charles R. Bell and Forrest P. Bell for appellant.

Laurence B. Finn for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is a suit for damages for the death of Douglas R. Morton. The appeal is from a judgment for the defendant on a directed verdict.

The decedent was an employee of the State Highway Commission, engaged in painting and repairing a bridge across Rolling Fork of Salt River, between Nelson and Larue Counties, when he was killed on May 8, 1936. The bridge is 150 feet long, with a steel superstructure. The defendant maintains on its own right of way, almost parallel with the bridge, an electric line of three wires, carrying 11,000 volts. The elevation of the wires is about the same as the top of the bridge superstructure, and at the point of the accident is 11 feet distant. Morton was on a chord or top girder of the bridge truss on the side nearest the electric line. It had been found necessary to remove a lateral steel rod 27 feet long extending diagonally across to the other chord which, with another rod, formed a brace in the shape of an "X" connecting the two trusses. The rod had been loosened and Morton was pulling it across with the end protruding far over the side of the bridge in order that it could be passed beneath the intersecting rod and be lowered to the floor. In extending it back the rod came in contact with the electric wire and Morton was electrocuted.

The plaintiff alleged negligence in erecting and maintaining a high tension wire too close to the bridge and without any protection or warning of its dangerous character. The line was constructed long after the bridge and ten or twelve years before the accident. The deceased had been at work on the highway and bridge for two or three weeks and his fellow workmen testify to their knowledge of the dangerous nature of the line. The deceased, an intelligent man, is chargeable with the same knowledge. The trial court excluded evidence that at one end the line was only six feet from the

bridge truss and confined the testimony to its proximity within the radius or reach of the rod being removed. As stated, it was eleven feet measuring at a right angle, but it was thirteen feet to the point where the rod touched the wire as it was being moved back at an angle. The court also excluded evidence of the foreman under whom the deceased was working that in view of the accident he considered the situation to be dangerous and had taken his men off the bridge; also testimony of a highway engineer that the line could have been constructed farther from the bridge without additional expense or burden. The court likewise withheld from the jury testimony of two witnesses who qualified as having expert knowledge of the fundamentals of electricity, which was in substance and effect that in their opinion, based upon hypothetical questions, the line was an unsafe distance from the bridge and from the standpoint of workmen on it the defendant had not used the highest degree of care in erecting and maintaining the line at that location.

The appellant argues that there was enough evidence of negligence to take the case to the jury, especially if the court had considered the proffered evidence which he maintains was competent. The first items of evidence, namely, as to the proximity of the wires to the bridge at another point than the accident, and as to the foreman after the accident considering the wire to be dangerous, was clearly incompetent. Likewise, that the defendant could have erected its line farther away from the bridge without additional expense. Appellant suggests no reason or authority for holding the evidence competent and we know of none. As to the testimony of the experts. Demarcation between fact and opinion evidence is often obscure, for many times it is difficult to say where fact leaves off and opinion begins. We think it clear, however, that the opinions of experts as to the ultimate fact of whether an open, visible situation is dangerous is not competent. That would be to allow the witness to take the place of the jury. It is but to express the thought differently to say that it is the province of a jury to reach and declare the final opinion as to the ultimate fact. A primary factor in this case was whether the placing of a heavily charged electric wire on a level with the top of a bridge truss,

eleven feet distant, was unsafe from the standpoint of a workman who might be expected to be there. As a rule, general but not inflexible, a witness cannot be allowed to express an opinion upon the exact question or matter directly in issue which the jury are required to decide. Wigmore on Evidence, Section 1920; 20 Am. Jur., Evidence, Sections 765, 782. Mr. Wigmore criticizes this statement (Section 1924) and as an expert authority on the subject of evidence says the only true criterion is:

"On *this subject* can a jury from *this person* receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally."

But under either abstract statement, the offered testimony of witnesses claimed to be skilled in matters of electricity that the condition described was unsafe was inadmissible. It was unsafe only if a workman should reach out with some conductive instrument—such as a steel rod—and touch the wire. There was nothing subtle about it and it took no expert to inform the jury as to the danger. Expert testimony is not permitted to invade the field of common knowledge. Barrett v. Brand, 179 Ky. 740, 201 S. W. 331. A distinction might be suggested. The common run of men—the hypothetical average men who make up the jury—might not know that a specified current of electricity will jump a certain distance and injure or kill a man though he does not touch it. It would be competent for a skilled witness to express an opinion concerning that phenomenon. On such a subject the jury could "receive appreciable help" from the witness, for it is not of the practical experience of jurors to know that scientific fact. But an opinion as to due care or its absence is not a proper subject of expert testimony. 11 R. C. L. 617; 18 Am. Jur., Electricity, Section 114. Therefore, we think the court properly ruled the proffered testimony to be inadmissible.

There remain in the case for our consideration the facts as above described. The question is resolved into whether the court properly ruled that as a matter of law there was no proof of negligence or that there was proof of contributory negligence on the part of the decedent.

There is no denial of the proposition that in constructing and maintaining an electric line all reasonable precautions are to be adopted and observed for the protection of every person at every place that one has a right to go or to be, and that this degree of precaution is of the highest, because in dealing with so deadly an instrumentality the highest degree of caution is but ordinary care commensurate with the danger. Louisville Gas & Electric Company v. Beaucond, 188 Ky. 725, 224 S. W. 179; Kentucky Utilities Company v. Searcy, 167 Ky. 840, 181 S. W. 662; Kentucky-Tennessee Light & Power Company v. Priest's Adm'r, 277 Ky. 700, 127 S. W. (2d) 616; Kentucky Utilities Company v. Black's Adm'x, 244 Ky. 562, 51 S. W. (2d) 905. That is the aspect of one person's duty toward another, without which there can be no recovery for damages resulting from any act or conduct. The question here is whether there was a violation of such duty owing the deceased. That in turn brings into play the rule that a defendant generally is not liable where no injurious consequences could reasonably have been contemplated as a result of the act complained of. Gosney v. Louisville & N. Railroad Company, 169 Ky. 323, 183 S. W. 538, L. R. A. 1916E, 458; Leonard v. Enterprise Realty Company, 187 Ky. 578, 219 S. W. 1066, 10 A. L. R. 238; Watral's Adm'r v. Appalachian Power Company, 273 Ky. 25, 115 S. W. (2d) 372. The application of the rule is not always easy to discern. The fact that a particular act which resulted in injury could not have been foreseen or the particular form of injury could not have been anticipated does not excuse negligence. Chicago Veneer Company v. Jones, 143 Ky. 21, 135 S. W. 430; Cincinnati, N. O. & T. P. R. Co. v. Padgett, 158 Ky. 301, 164 S. W. 971. Thus a distributor of electricity whose system was defectively constructed or became unsafe through faulty insulation is not excused from liability to one injured thereby on the idea that he could not foresee that the injured person would do the particular thing he did do, for the distributor is charged with knowledge that the condition he created was calculated to deceive a person who had the right to act upon the assumption that the system was safe. Such is the case of Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S. W. (2d) 616, upon which the appellant relies, and McLaughlin v. Louisville Electric Light Company, 100 Ky. 173,

37 S. W. 851, 18 Ky. Law Rep. 693, 34 L. R. A. 812, which is more applicable in point of fact and law. There the defendant was held liable for injuries sustained by a man engaged in painting a building coming in contact with a negligently insulated electric wire on the building. Of like character is Perham v. Portland General Electric Company, 33 Or. 451, 53 P. 14, 40 L. R. A. 799, 72 Am. St. Rep. 730, and Hoppe v. City of Winona, 113 Minn. 252, 129 N. W. 577, 33 L. R. A., N. S., 449, Ann. Cas. 1912A, 247, where workmen on bridges on which electric wires were placed were injured, the former by coming in contact with an uninsulated wire and the latter by ''brush'' electricity or the ''jumping'' of the current across an arc, the workmen not directly touching it.

The distinction in principle is that in those cases the injury was produced by the negligence complained of—the proximate cause—although it may not have been foreseen, while in others the act of the defendant, alleged to be or actually negligent, indirectly or remotely caused the result, and for such to constitute actionable wrong the accident must have been foreseen or anticipated in the light of the attendant circumstances. Nunan v. Bennett, 184 Ky. 591, 212 S. W. 570. Where no danger exists in a condition which merely made it possible for an injury to happen through some independent, unrelated and efficient cause, the condition cannot be held as the proximate cause. Collins' Adm'r v. Chesapeake & O. Railway Company, 276 Ky. 659, 124 S. W. (2d) 1039. Under this general law, even with the high degree of care imposed upon distributors of electricity, they are not required to guard against that which a reasonably prudent person under the circumstances would not anticipate as likely to happen; thus they are not required to insulate wires at points where no one could reasonably be expected to come in contact with them. Watral's Adm'r v. Appalachian Power Company, supra; Frederick's Adm'r v. Kentucky Utilities Company, 276 Ky. 13, 122 S. W. (2d) 1000.

This case is analogous to and ruled by Kentucky Utilities Company v. Searcy, 167 Ky. 840, 181 S. W. 662, and authorities cited therein. The defendant maintained a line of poles and wires along the highway. Near the top of the poles were three uninsulated wires carrying 11,000 volts of electric current, and four feet

lower were two insulated wires ordinarily carrying two thousand volts, but at the time of the accident resulting in the lawsuit there was no current in them. The plaintiff was a member of a crew engaged in putting a telephone line on the same poles about 8½ feet below the uninsulated high-tension wires. The method being pursued in their work was not dangerous but a wire became entangled and a workman in trying to loosen it flipped or jerked it with such unnecessary force that it flew up a distance of 8½ feet and came in contact with the high-tension wires. Electricity ran through the loosened telephone wire to the ground where the plaintiff had hold of it and caused the injuries for which he sought damages. We held that a peremptory instruction should have been given for the defendant. It was proved in that case, and undenied in the case at bar, that it is impossible to insulate wires carrying 11,000 volts. The conclusion was reached as a matter of law that in placing the wires 35 feet above the ground the defendant had exercised the proper degree of care to protect the public from any danger to be anticipated from contact with them; that the telephone employees' work did not require them to come nearer than 8½ feet to the uninsulated electric wires and that the defendant could not have reasonably anticipated that any of those men, who had full knowledge of the danger, would do such an unusual and unexpected thing as to jerk a wire with such force as to cast it high enough to touch the electric wire. The flipping of the wire by the plaintiff's fellow-workman was regarded as the proximate cause of the accident. So it is in the case at bar. The location of the defendant's line was not dangerous to anyone, and the act of the deceased was not one that could have been reasonably anticipated. We think, therefore, that the court properly directed a verdict for the defendant.

The judgment is affirmed.