# Green River Rural Electric Co-op. Corporation v. Blandford.

December 5, 1947.

Sidney B. Neal, Judge.

126

Wm. Marshall Bullitt, Eugene B. Cochran and Bullitt & Middleton for appellant.

Beckham A. Robertson, Clarence Bartlett, Woodward, Dawson & Bartlett and Ernest Woodward for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Affirming.

The appellee, Vird A. Blandford, was seriously injured by contact with appellant's high-tension electric line on December 18, 1945. The amount of the verdict, $15,790, is not questioned as excessive. The primary questions are negligence and contributory negligence.

At the point of the accident the transmission line along the Owensboro and Calhoun highway ran a short way over the land of the appellee's brother, Joe Blandford. There is doubt as to an easement, the appellee claiming the company was a trespasser. The point is not of material importance here. Cf. Kentucky Utilities Company v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. 2d 283, 57 A. L. R. 1054. The wires ran through the branches of a locust tree over a well near the road, in the yard, 140 feet from the dwelling house. It had

been placed there about eight years before the accident. Joe Blandford had recently come into possession of the property and built a concrete block house over the well about five by six feet and seven feet high. He had installed an electric pump, the current coming from his dwelling. The high-tension line through the branches of the tree was directly over the well house. One wire, carrying 6,900 volts, was 27½ feet above the ground, and another called the "dead wire" was about 23½ feet.

At their brother's request, the appellee, Vird Blandford, and Bernard Blandford were engaged in taking a thirty foot pipe out of the well in order to replace the check valve at the end of it. A board was removed from the top of the well house and Vird, on the inside, lifted the pipe up through the hole in the roof where Bernard held it steady and clamped it until Vird could make another hitch, a foot or so at a time. Just as the bottom of the pipe came out of the well, the top of it either came in contact with an electrically charged branch of the tree or touched the high-tension wire. Vird Blandford was knocked unconscious and suffered severe injuries, including the loss of one of his hands. Bernard was not hurt, apparently because he was wearing gloves and standing on the wooden roof, or perhaps because he did not have hold of the pipe at the instant of contact.

Wet snow was clinging to the branches of the tree. The pipe, of course, was wet as was the well block on which Vird Blandford was standing. There is contradiction of the plaintiff's evidence that the high-tension wire was rubbing small branches of the tree at two places, a defendant's employe saying there were spaces of eighteen inches between. There is also contradiction as to whether the wire had previously been in contact and burned the tree.

Bernard Blandford testified that as the pipe was being drawn out and up over the well house, it touched the limbs of the tree. An electrical engineer told the jury that it was not considered safe electrical engineering to put a high-tension line through the limbs of a tree, or without a clearance of at least twenty feet for trees or buildings. The defendant's construction en-

gineer thought ten feet to be safe. Plaintiff's expert further testified that the wet tree and iron pipe would form a good conductor, and that the closer the pipe came to the wire the more voltage it would receive. In answer to a hypothetical question describing the conditions and the contact with the wet tree or the heavily charged wire by the wet pipe, as claimed by the plaintiff, and relating the incidents of the accident, the witness testified that it could have been caused in that way.

On the other side, and perhaps on stronger evidence, it was proved that the pipe came in direct contact with the live wire, for there was evidence that soon after the accident the pipe was found to be against and slightly welded to the wire. Of course, it may have fallen against it from a limb after the deadly current had gone through and injured Blandford.

There is no dispute as to the high degree of duty on the part of one maintaining a high voltage electric line. About the only thing certainly known about electricity is its highly dangerous character and that the greater the voltage the greater the danger. So the duty as often declared is, in short, to exercise the utmost care to prevent injury, which, however, is but to say that ordinary care in dealing with so dangerous a force is the highest degree when put into practice. Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S. W. 2d 345, and cases cited therein.

The appellant passes by the evidence that it was negligence to maintain such a highly deadly line touching or even within eighteen inches of the branches of a tree in a man's yard over his well. That such is negligence cannot be doubted. 29 C. J. S., Electricity, sec. 42, note 61. It rests its case upon the proposition that there was no negligent act which proximately caused the accident, as if the tree and well were not involved. It is claimed that the use of an uninsulated wire for cross-country transmission lines is not negligence, and that prudence does not require that a company maintaining such a line should anticipate that a person will come in contact with it in the manner in which this injured man did, namely, by lifting a 30-foot iron pipe into the air. The appellant relies upon Morton's Adm'r

v. Kentucky-Tennessee Light & Power Co., supra. The case supports the proposition in general. But the location of that wire and this one makes a distinction. There the wire was on the company's own right-of-way, running on a level with the top of the truss of a bridge and eleven feet from it. A workman took out a long steel rod from the bridge and extended it to the side so that it came in contact with the wire and electrocuted him. That was in the open country. This wire was in a man's yard, through the branches of a tree, over a well which was being used, and, of course, at a place where people would frequently be. The defendant knew of the well and had recently run a new line for the installation of the electric pump. It is not to be exonerated from liability on the assumption no one would ever touch the branches of the tree or the wire itself, which was suspended so low immediately over the well.

As stated in the opinion in the Morton case, supra, one of the factors to be considered in determining the existence or absence of negligence is reasonable contemplation of contact or injury to a person as a result of the condition created or permitted by the defendant. The test is whether it could have been reasonably foreseen or anticipated as likely to appear, taking into account the company's own past experience and the experience and practice of others in similar conditions. It is not that a particular act, which may have been unusual, could have been apprehended, but whether people would come in dangerous proximity and might be expected to do any reasonable thing while there from which injury would result. To illustrate. In the case of Kentucky Utilities Company v. Black's Adm'x, 244 Ky. 562, 51 S. W. 2d 905, it could have been reasonably foreseen that a high-tension wire suspended close to a radio aerial would result in injury to somebody, although perhaps not that a man would be electrocuted by turning on his radio. Here we think it could have been reasonably expected that somebody would get hurt from having a high voltage wire running through the branches of a tree over a well in a man's yard, 27½ feet from the ground and 20 feet from the top of the well house. Anticipation of this or any other particular act is not the test of duty. Kentucky-Tennessee Light

& Power Co. v. Priest's Adm'r, 277 Ky. 70, 127 S. W. 2d 616.

The appellant presses the argument that failure to insulate the wire was neither negligence nor proximate cause. We may for the argument agree that standing alone failure to insulate the wire was not negligence per se. But without insulation, the greater the danger and the greater the commensurate duty of care and vigilance. The negligence, as the jury found under instructions about which no complaint is made, was that the defendant had failed "to exercise the utmost care and skill to so construct, maintain, insulate or protect its wires at the place described in evidence as to make them free from danger to those who might be brought in contact with same while performing such work as could reasonably have been anticipated" and that the plaintiff "was performing such work as could reasonably have been anticipated by the defendant."

The real defense is that of proximate cause and contributory negligence, which, in this case, seems to be one and the same thing. There was no independent agency or intervening act of a third person. The point is that raising the pipe was the proximate cause and that the negligence of plaintiff, who had notice of the dangerous condition and voluntarily or carelessly brought himself in contact with the wire, precluded recovery. His duty, of course, was to exercise ordinary care, commensurate with the danger.

The plaintiff testified that while he knew that power lines were along the highway, he was not familiar with the conditions at his brother's place, particularly that he had not observed this wire running through the trees and above the well house. The young man had recently returned from the army and was living at his father's home a half mile or more away. He had been at his brother's new place only once before and that was at his residence. On the day of the accident he went into the well house for the first time and had not noticed the wire overhead. If this be not enough to absolve him from the charge of contributory negligence as a matter of law, it is to be remembered that the tree was covered with snow and the wire was hardly visible through the branches. The plaintiff had general knowl-

edge of danger from a highly charged transmission line, but he did not know it was uninsulated. Being at work inside the house he could not see where the pipe was going as he lifted it, except that it was upward through the roof. We cannot agree that raising the pipe as a unit instead of unscrewing the three sections, of which it was composed, was negligence. The method was a simple and reasonable way of getting it out. The plaintiff was where he had a right to be and engaged in doing the work in an ordinary and prudent way. In Frederick's Adm'r v. Kentucky Utilities Company, 276 Ky. 13, 122 S. W. 2d 1000, in differentiating the act of a boy in deliberately throwing a wire over and upon a transmission line, which the court held to be negligence on his part, we observed that had he been at work on the farm of his employer and thereby had come in contact with the wire through the projection of machinery otherwise, the question would be different.

We have in our own reports analogous cases in which it was held that contributory negligence was a question for the jury to determine. City of Henderson v. Book, 187 Ky. 612, 219 S. W. 787; Louisville Gas & Electric Co. v. Beaucomb, 188 Ky. 725, 224 S. W. 179; Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S. W. 2d 616. But we may note some foreign cases of particular pertinence.

In Philbin v. Marlborough Electric Company, 218 Mass. 394, 105 N. E. 893, an electric line ran through the branches of a tree overhanging from adjoining land. A man was in the tree near its trunk removing moth's nests from it. The tree was wet with snow and the current escaped into the ends of the branches. He received a shock, the effect of which was to give a jerk to a pole which he had in his hands. It had a metal cutter on the end from which a wire ran to a handle by which it was operated. This was caused to fall in contact with the wire. The court found that there was evidence of negligence on the part of the electric company in placing its uninsulated wire, carrying high voltage, in such close proximity to the branches of the tree as to create danger of electricity passing on through them whenever they were moistened with snow or rain, as they were liable to be at any time; that it knew or

must be presumed to have known of the danger of just such an accident as happened. The court further held that the question of contributory negligence of the deceased was for the jury. A similar case, also involving the removal of moths from trees, with the same conclusion, is McCrea v. Beverly Gas & Electric Co., 216 Mass. 495, 104 N. E. 365.

In Oesterreich v. Class, 237 Wis. 343, 295 N. W. 766, 134 A. L. R. 499, a sagging high voltage wire came in contact with an apple tree in which a boy was electrocuted while picking apples. The weight of his body brought the branches of the tree in contact with the wire. The court reasoned that the owner of the line knew that persons were likely to climb the tree to gather fruit and put his weight upon the branches, which would bring them closer to the wire. It was held the case should have been submitted to the jury because (1) the facts were open to the inference that the wire was too close to the tree if the deceased actually came in contact with it, or (2) it could be reasonably inferred that the sagging of the limbs caused by his being in the tree should have been anticipated by the defendant. It was further held that failure on the part of the deceased to notice the wire, in view of the state of the foliage, could not be deemed conclusive of his contributory negligence.

In Card v. Wenatchee Valley Gas & Electric Company, 77 Wash. 564, 137 P. 1047, there was a high-tension wire 17 feet above irrigated land. In fixing an irrigation flume, the owner inadvertently brought an iron pipe in contact with the uninsulated wire. The court held that the test of liability was not whether the particular accident could have been apprehended, but whether a person following his usual avocation, where he had a right to be, might be injured by the current. The question of his contributory negligence was also held to be for the jury.

In Howell v. San Joaquin Light & Power Corporation, 87 Cal. App. 44, 261 P. 1107, a high voltage wire ran over a cultivated field to a pumping plant. It had been allowed to sag about four feet to within nineteen feet of the ground. In taking out a 20-foot water pipe in the field, a workman raised it up so that it touched

the uninsulated wire and caused his death. He was there for the first time on the day he was killed. There was nothing in the testimony to show that the deceased had or did not have knowledge of the current being carried by the wire or whether the pipe was or was not blown against the wire without any fault on his part. The questions of negligence and. contributory negligence were held to be for the jury, and a judgment for the plaintiffs was affirmed.

There are other cases of like character supporting the conclusions of these. Among them are Neumann v. Interstate Power Co., 179 Minn. 46, 228 N. W. 342; Casualty Co. of America v. A. L. Swett Electric Light & Power Co., 230 N. Y. 199, 129 N. E. 653; Arlington v. Town of Pinetops, 197 N. C. 433, 149 S. E. 549; Deming v. City of Chicago, 321 Ill. 341, 151 N. E. 886. There are also cases in apparent conflict, among which may be noted Arkansas Power & Light Co. v. Hubbard, 181 Ark. 886, 28 S. W. 2d 710; Bujol v. Gulf States Utilities Company, La. App., 147 So. 545; State, for Use of Bell, v. Eastern Shore Gas & Electric Co., 155 Md. 660, 142 A. 503; Aljole v. Penn. Cent. Light & Power Co., 281 Pa. 368, 126 A. 759—all of which are cited by the appellant. Some of them are distinguishable upon the factual conditions or in the absence of negligence on the part of the defendant in maintaining the wire. It seems to us upon our independent reasoning and our own general authorities, together upon the foreign cases of closer application, that the questions of negligence and contributory negligence in this case were clearly for the jury to determine.

Near the end of the trial the defendant offered to file an amended answer to conform to the proof as it interpreted its legal effect. It alleged that Bernard and Vird Blandford were engaged in a joint or common enterprise and each was the agent of the other; that Bernard was negligent and his negligence was attributable to the plaintiff. It could well be said that in denying the amendment at this time the court exercised a reasonable judicial discretion. But we go further to say that we see no grounds for imputing any negligence on Bernard's part, assuming for the purpose that he was negligent. Fellow workmen are not fellow

servants. The fellow-servant doctrine applies only in relation to the law of master and servant, being based upon the implied contract of assumption of risk, and does not extend to a stranger to the relation, as was the defendant in this case. Kentucky & Indiana Bridge & Railroad Co. v. Sydor, 119 Ky. 18, 82 S. W. 989, 26 Ky. Law Rep. 951, 68 L. R. A. 183, 7 Ann. Cas. 1177. Nor can we see any imputation of negligence outside the fellow-servant rule as is sometimes held in relation to parties engaged in a joint enterprise. Fellow workmen are not joint adventurers. There was no mutual or joint profit or advantage inuring to or for these young men. There was no relationship of agency of one for the other. Neither of them had any authority to control the means employed by or direct the conduct of the other with respect to the job in hand, which is a distinguishing feature of a common enterprise or joint adventure. 3 Am. Jur., Negligence, Secs. 237, 238. The mere fact that two persons are doing something together does not make each chargeable with the negligence of the other.

Objection was made to the answer of plaintiff's electrical engineer in response to the hypothetical question, which we have quoted in the earlier part of this opinion, that the accident "could have been so caused." We think this was competent as the expression of an expert's judgment.

The judgment is affirmed.