## KENTUCKY & WEST VIRGINIA POWER CO.

### v.

### ADAMS.

Court of Appeals of Kentucky.

April 23, 1954.

Baird & Hays, Pikeville, for appellant.

W. A. Johnson, Paintsville, for appellee.

CLAY, Commissioner.

Appellee recovered a $3,500 judgment against appellant for personal injuries sustained when a crane near which he was working came in close proximity to or made contact with one of appellant's high tension transmission lines. On this appeal appellant contends it was entitled to a directed verdict.

The accident happened as appellee assisted in the loading of a crane and other equipment owned by him upon a trailer, to be transported from the premises of the Middle Fork Coal Company at Greentown. This operation was attempted under the high tension wires of appellant which supplied power to the coal company. Appellant's three energized uninsulated wires carrying 7500 volts of electricity were strung between the main transmission line on the highway and a pole supporting three transformers on the coal company's property. These wires at the lowest point were 30½ feet above the ground.

In the manipulation of the crane by one of appellee's employees it made contact with or came in close proximity to one of the energized wires. The transmission of the current to the crane was carried to appellant on the ground and caused his injuries.

In support of the argument that it was entitled to a directed verdict appellant places reliance on Kentucky Utilities v. Searcy, 167 Ky. 840, 181 S.W. 662. In that case an employee of a telephone company was electrocuted when stringing a telephone wire on a pole jointly used by his employer and the defendant power company. It was decided that since the uninsulated power lines were 8½ feet above the lines upon which the telephone company employees were required to work, the defendant could not anticipate that contact would be made with them, and therefore it had exercised the utmost care in the location of its wires. As in the case before us, there was evidence that power lines carrying high voltage cannot be effectively insulated so as to be safe. It was held the defendant power company was entitled to a directed verdict.

Appellee relies upon Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S.W.2d 616. In that case a supposedly insulated 110 volt wire was lo-

cated 15 feet above the ground on premises where construction work was being done. The plaintiff's decedent was electrocuted when he attempted to lift this wire so that a steam shovel could pass under it. It appeared the wire was placed on the premises for use in connection with the work being performed, that apparently it was an ordinary safely insulated line, and that the defendant reasonably could anticipate that it would be necessary to raise the wire to permit equipment to pass under it. In view of these facts it was held the case should be submitted to the jury.

Another case bearing upon the question, not referred to by either party, is that of Green River Rural Electric Co-op. Corporation v. Blandford, 306 Ky. 125, 206 S.W. 2d 475. In that case the plaintiff was seriously injured when a pipe being removed from a well came in contact with the defendant's high tension line. We decided that the case was one for the jury in view of the location of the line running through a tree in a man's backyard directly above his well.

More recently we have held that a power company was not entitled to a directed verdict when a crane came in contact with an uninsulated power line 36 feet above the ground. Blackwell's Adm'r v. Union Light Heat & Power Company, Ky., 265 S.W.2d 462. However, in that case the wires had been relocated in anticipation of the very construction work in close proximity thereto which resulted in the accident. In addition, the defendant had violated an ordinance with respect to insulating the wires, and in view of a conflict of evidence, a jury question was presented as to whether or not this could be done safely and effectively.

An examination of the foregoing cases leads to the conclusion that the location of the line and the nature of the operation which causes the injury are controlling considerations. Upon these two factors rests the determination of whether or not, in the exercise of the utmost care,

a power company reasonably may have anticipated the character of accident which occurred. In considering this question, it must be borne in mind that the duty of the defendant is owed to the public generally and not to every person who might possibly in unusual circumstances make contact with the dangerous wire. The public of course would include any member thereof who the defendant knows or should know might be threatened with the danger.

Unless the appellant is an insurer, it is not liable for every possible injury that may be caused by the maintenance of an exposed transmission line. Upon the facts shown in this case we do not believe appellant failed to exercise the care required of it in that it did not have its lines so located that appellee could not be injured.

While the evidence shows appellant had knowledge of the use around coal tipples of the type of equipment used by appellee, there is no evidence even suggesting it had notice that appellee would use such equipment in proximity to the transmission line. As a matter of fact, the crane was not being there operated in connection with the mining operation, but was being loaded to be removed from the premises. It would require more than extreme prescience upon the part of appellant to anticipate that appellee would select this place for that purpose. There is no proof appellee or anyone else had ever before used or loaded a crane or other equipment of such height at this point or would be likely to do so.

It was not negligence upon the part of appellant in failing to foresee and protect the appellee from the possible danger incident to this kind of activity beneath its wires. In our opinion a verdict should have been directed for the appellant.

The conclusion reached makes it unnecessary to pass upon the question of contributory negligence.

The judgment is reversed for consistent proceedings.