Charles D. VAUGHT'S ADMINISTRATRIX
(Monnie Vaught), Appellant,

v.

KENTUCKY UTILITIES COMPANY,
Appellee.

Court of Appeals of Kentucky.

Dec 7, 1956.

Fritz Krueger, W. R. Jones, Somerset, Allen Prewitt, Frankfort, for appellant.

Squire R. Ogden, T. M. Galphin, Jr., Ogden, Galphin & Abell, Louisville, Ben D. Smith, Somerset, for appellee.

HOGG, Judge.

Appellant, Monnie Vaught, brought this action as the personal representative of Charles D. Vaught seeking to recover $75,000 damages to his estate and $1,520 funeral and burial expenses from the Kentucky Utilities Company on the ground that the company had negligently constructed and maintained its electrical wires, thereby causing the electrocution of Vaught. At the trial, after the introduction of all evidence by both parties, the court directed the jury to return a verdict for the company upon the grounds there was no proof of negligence and the proof showed that deceased was guilty of contributory negligence which barred recovery, as a matter of law. The administratrix appeals.

The accident occurred at Science Hill, Pulaski County, Kentucky, about two o'clock on the bright, sunny afternoon of June 24, 1954, when Vaught was attempting to install a water pipe twenty-six feet and three to five inches in length in a water well. The pipe was to be fitted down into the well to draw the water out, as part of an electrical pumping system which he was employed to install for a Mr. Butts, who owned the property where the well was located, and lived approximately 225 feet from the well. Vaught was thirty-nine years of age and had fourteen years of experience in electrical work and in the installation of pumps. Some time prior to the time of the accident, he and a helper had installed a wooden pole at the side of the well to support the electrical wires from the Butts' house to the pump.

The well was first dug about 1902. In 1929 the company ran high-voltage lines near the well, from which at that time the water was taken by a system of a hand operated bucket and pulley. The top of the well was enclosed by a concrete box two feet and seven inches high about 1932, and in 1951 the company relocated one of its utility poles some twelve inches and replaced some small poles with larger ones.

The scene where the well was located has always been an open field, and the nearest building to the well was the Butts' house, about 225 feet away. The well was 200 feet from the old U. S. 27 Highway and within 400 to 500 feet from a restaurant and filling station across the road. Three of the company's high tension lines ran north to the top of a pole 29 feet high and 75 feet from the well. This pole at a lower level had two crossarms, to which connect a large number of telephone wires. Two uninsulated outside electrical wires carried 7,200 volts of electricity, and an inside wire, constructed at a slightly lower elevation than the outside wires, was a neutral or ground wire, contact with which will not result in injury. All of these wires were within plain view and no trees grew in the vicinity.

At a point directly beneath the wires, the edge of the well was 9 feet from it to the east. Appellee's measurements the day after the accident showed that the high-voltage wire nearest the well was 23 feet and 10 inches above the ground. Appellant takes the position that this wire was from 20½ feet to 21 feet above the ground, according to the measurement made on the afternoon of the accident by a Somerset, Kentucky, merchant, which measurement certainly was not minutely accurate. The evidence is undisputed that the high-voltage wire nearest to the well was 23 feet and 6 inches from the top edge of the concrete box covering the top of the well.

There were no eyewitnesses to the accident, as Mr. Vaught was left by a helper to work alone about twenty minutes before. Several persons were attracted to the scene within twenty minutes after the accident by the smoke and fire from Vaught's clothes and the grass near where he lay, about 5 feet southwest of the well. The pipe, weighing around 45 pounds, was resting against the high-voltage wire at a 45 degree angle, with from 1 to 2 feet of the upper end extending above the wire and the lower end sticking in the ground from

1 to 3 feet from the well. Vaught died a short time after the witnesses arrived.

The standard height for electrical transmission wires of between 750 and 15,000 voltage, as prescribed by the Public Service Commission of Kentucky and the National Electrical Safety Handbook, is a minimum of 15 feet over places accessible to pedestrians. The field over which the wires ran is within this classification prescribed by the safety codes, and the wires are 8 feet above the minimum height, according to the company's measurements. Even by the somewhat inaccurate measurements of 20½ to 21 feet taken by the merchant, the height of the wires was about 6 feet above the minimum standards. The minimum height along roads in rural districts is 18 feet, and when crossing public streets and roads, in urban and rural districts, the wires must be 20 feet above the ground.

The appellant urges that when the company ran its high-voltage wires across the field where the well was being hand operated, it knew the field was a place where people would frequently be, and it should have anticipated that there would be at some time an electric pumping system installed in the well and that someone would be injured in so doing through coming into contact with the wires. The company, therefore, negligently located and maintained uninsulated, high-voltage wires in such close proximity to the well.

In constructing and maintaining electrical lines the highest degree of caution must be exercised for the protection of all persons at places where they have a right to go, because in dealing with so deadly an instrumentality the highest degree of care and skill known in the conduct of such business to prevent injury to such persons is required. Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345. The question in determining the existence or absence of negligence is whether the injury can be reasonably foreseen or anticipated as likely to occur, taking into account the company's past experience and the practice of others under similar circumstances. Green River Rural Electric Co-op. Corp. v. Blandford, 306 Ky. 125, 206 S.W.2d 475; Frederick's Adm'r v. Kentucky Utilites Co., 276 Ky. 13, 122 S.W.2d 1000; Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., supra, 282 Ky. 174, 138 S.W.2d 345. The consideration of the location of the wires and the nature of the operation which causes the injury is important in determining whether or not, in the exercise of the utmost care, a power company reasonably may have anticipated the accident which occurred. Kentucky & West Virginia Power Co. v. Adams, Ky., 267 S.W.2d 717.

Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345, is a case where a workman was repairing a steel bridge, parallel with which bridge the power company had strung a high-voltage wire long after the construction of the bridge, when he was electrocuted by touching the wire with a metal rod he was removing from the bridge. The rod was 27 feet long and the wire was 11 feet from the bridge at the point where he touched it. We sustained the action of the trial court in directing a verdict in favor of the power company, and said, "The location of the defendant's line was not dangerous to anyone, and the act of the deceased was not one that could have been reasonably anticipated." It is much more likely that a workman on a bridge might come in contact with a wire 11 feet away than, as in this case, to conclude that one man attempting to install an electric pumping system in a well 23 feet and 6 inches from a wire might touch the wire with a 26-foot pipe, which was being put down into the well.

Later, in Green River Rural Electric Co-op. Corp. v. Blandford, 306 Ky. 125, 206 S.W.2d 475, this court affirmed a judgment against the power company. There the company's high-voltage wires ran through the branches of a tree directly over a well near the road, in the yard of

the plaintiff, 145 feet from the dwelling house. While the plaintiff was down in the well engaged in taking a 30-foot pipe out to replace it, the pipe came into contact with the branches or the wire and the plaintiff was electrically shocked. The high-voltage wire was 27½ feet from the ground, and it and the branches of the tree were covered with snow. Although this case is similar to the case at hand in that it involves a water well, it is distinguishable in its other facts. Most important in the case was the fact that the wires ran through and touched the tree and were covered with snow. The court pointed out that to allow high-voltage wires to touch the tree was negligence itself and the obstruction of the wires was significant to show that plaintiff could not see them and did not have knowledge of their presence. The company had actual knowledge of the electrical well because it had recently run a new line for the installation of the electric pump. Also, the wires were not located in open country but were in a man's yard, directly over a well, and 145 feet from the house. Although the Blandford case is strongly relied upon by appellant, we fail to see where it is of controlling applicability here because the facts are vastly different.

 The company's compliance with the safety standards of the Public Safety Commission does not in itself free the company of negligence, but, apart from unusual circumstances, the standards do aid as a guide in measuring the care exercised by the company. See Rudd v. Public Service Co. of Oklahoma, D.C. N.D.Okl., 126 F.Supp. 722. The well was located in an open field approximately 225 feet from the nearest house. When the company strung its wires across the field, some 23 feet and 6 inches from the top of the well, and 8 feet above the minimum distance from the ground, it could not reasonably anticipate that someone would be injured by coming in contact with the wires while installing an electrical pumping system in the well. So, we fail to see any evidence of negligence on the part of appellee.

 Assuming, however, that there was adequate evidence that the company was negligent to have submitted the question to the jury, the appellant is barred from recovery by decedent's own contributory negligence. The decedent was an experienced workman in working with electrical equipment and the installation of pumps. He had worked in the field where the company had its lines for a period of time prior to the accident sufficient to become familiar with the presence of the wires. He had placed a pole at the well for the electrical wires that would furnish power for the pump, and there was nothing to obstruct his view of the wires during that time. The utility pole, 72 feet from the well, to which the high-voltage lines were connected, had two crossbars with many telephone wires attached thereto, and the decedent was conscious of the presence of the wires. A risk of injury may be so obvious that one must be taken to have known of it.

Appellant relies on the fact that the sun was bright at the time decedent was attempting to place the pipe into the well to establish that decedent could not see the wires because the sun was in his eyes, blocking the visibility of the wires. A witness testified that after the accident he could not determine whether or not the wires were insulated by looking at them against the sun. But even if the sun did hinder decedent's ability to see at the moment he lifted the pipe, he knew of the wires' presence and danger, and he had the duty to exercise reasonable care to avoid coming in contact with them.

It is needless to define the exact movements of the decedent or the direction in which he faced. As an experienced electrical workman, he failed to exercise reasonable care in attempting to raise a 40 or 50 pound, 26 foot pipe by himself when in the close proximity of high-voltage

wires, of which he had knowledge, in order to place it in a well opening 2 feet and 7 inches off the ground. This is especially so when he had another safe approach to the well from the east, where there were no wires. Reasonable care demanded that every precaution be taken to avoid contact with the wires.

Judgment affirmed.