R. M. ISBELL, etc., Plaintiff,

v.

UNION LIGHT, HEAT & POWER COM-
PANY, Defendant.

No. 746.

United States District Court
E. D. Kentucky,
Covington Division.

June 13, 1958.

William P. Sidebottom, James J. Gilliece, Jr., Covington, Ky., for plaintiff.

Blakely, Moore & Blakely, Stephens L. Blakely and John J. O'Hara, Covington, Ky., for defendant.

SWINFORD, District Judge.

This case was tried on law and facts before the court without the intervention of a jury. It is now finally submitted for judgment.

The plaintiff, Maurice Isbell, was an employee of the Williams-Austin Construction Company which was engaged in laying a gas pipe line from a point in Campbell County through Kenton County, Kentucky, as an independent contractor for the Central Kentucky Natural Gas Company. In the work of digging the pipe ditch and cleaning out cave-ins of earth, the construction company was using a piece of heavy machinery consisting of a truck on which was mounted a crane with a long boom which could be lowered, raised, and swung to the right or left by the operator. The equipment could be moved backward, forward, right and left. The boom was approximately 15 or 16 feet above the ground. This piece of machinery was known as a clamshell.

The operator of the clamshell was a fellow workman of the plaintiff by the

name of Claunch. It was the duty of the plaintiff to assist the operator of the clamshell by giving directions and signals to enable the operator to lower or raise and place the bucket in the work of cleaning out the ditch.

The scene of the accident was in Kenton County, Kentucky, near what is known as Dudley Road, a state or county highway. Leading off of this road there was a gravel road which served two dwelling houses. Running parallel with the gravel road and approximately 8 feet away from the road were two electric wires between poles which were 350 feet apart. At the immediate place where the accident occurred the wires were respectively 17 feet and 10 inches from the ground for the phase wire and 15 feet and 4 inches for the neutral wire. The phase wire carried 2,400 volts and was insulated. The neutral wire was not insulated but was mounted directly on the pole on a metal clamp and carried no voltage. It was grounded at each pole along the line. There were red flags or ribbons tied on these wires as a warning to the workmen and there is evidence to the effect that the flags or ribbons were tied on by the construction company.

The defendant had never been notified of the fact that the equipment of the construction company was to be used at this point at the time or on the day of the accident although there is evidence to the effect that its agents had some general knowledge of the construction going on in that part of the county.

The plaintiff and Claunch, with the clamshell, had been on this location for about two hours on the day of the accident and prior to the accident. They were both aware of the wires and the danger signals evidenced by the red flags. The clamshell had been back and forth under the wires on more than one occasion. A part of the duties of the plaintiff was to assist the operator of the clamshell by locating on the ground wooden skids.

In an attempt to clean out a cave-in of earth in the ditch, the operator of the clamshell ran upon one of these wooden skids which caused the boom of his equipment to become engaged with the neutral wire and pushed it against the phase wire. This caused sparks to fly from the point of contact. The plaintiff's attention was attracted by the sputtering noise and the sparks and he started to run from the place where he was standing. The movement of the boom restored the position of the wires and the plaintiff went back to the place where he was standing in order to direct the movement of the boom and the bucket. It was then that a second movement of the boom, when the machinery engaged the skid, caused a second entanglement with the wires and a parting of the phase wire. The plaintiff attempted to get out of danger by jumping to the other side of the ditch but the wire fell upon him and burned him severely. The operator of the clamshell, by use of the boom, knocked the wire off the plaintiff and evidently thereby saved his life. His wounds were severe and he suffered permanent damage and injury to his body.

This case presents three questions for determination; first, did the plaintiff by a preponderance of evidence sustain the burden of proving that the defendant was guilty of negligence; second, does the evidence for the defendant establish the fact that it was not negligent; and, third, was the plaintiff guilty of contributory negligence as a matter of law.

The Public Service Commission of Kentucky in its rules for electric utilities adopted as a standard practice the National Electrical Code as approved by the American Standards Association. In its rules and regulations for the government of electric utilities, the Commission further provided for practice not covered by the National Electrical Code by taking as a guide the National Electrical Safety Code issued and approved by the Bureau of Standards, Division of United States Department of Commerce. All of this is set forth in Plaintiff's Exhibit 1.

Plaintiff's Exhibit 2 is the National Bureau of Standards Handbook H43 is-

sued by the United States Department of Commerce on August 15, 1949. On Page 62 of Plaintiff's Exhibit 2 there is a table which sets forth the height required for electric wires of the type involved in this lawsuit. Wires carrying 750 to 15,000 volts over spaces or ways accessible to pedestrians only, which must be construed to mean where wires cross over places accessible to pedestrians only, must be 15 feet from the ground. Page 59 of Plaintiff's Exhibit 2 sets forth the requirements of neutral conductors and provides that neutral conductors of supply circuits which are effectively grounded throughout their length and associated with circuits of 750 to 15,000 volts between conductors may have the same clearances as circuits of 0 to 750 volts between conductors. Turning again to Page 62, the table shows that neutral wires carrying 0 to 750 volts must have a clearance from the ground of 15 feet, subject to the provisions of a footnote which provides that such wires limited to 300 volts may have a height of only 12 feet.

It is established by a preponderance of evidence that the phase wire at this point carried 2,400 volts and was 17 feet and 10 inches above the ground and 8 feet from the driveway which it paralleled. The neutral wire was the same distance from the driveway and 15 feet and 4 inches above the ground.

▇ Where a safety code is adopted or approved by a state it constitutes a guide for electric companies. Rules and regulations of an administrative agency duly adopted pursuant to the powers delegated to it have the force and effect of law. Union Light, Heat & Power Co. v. Public Service Com'n., Ky., 271 S.W.2d 361. Maintenance of a line in accordance with the code establishes prima facie evidence of the absence of any negligence on the part of the company. Rudd v. Public Service Co. of Oklahoma, D.C., 126 F.Supp. 722; Vaught's Adm'x v. Kentucky Utilities Co., Ky., 296 S.W.2d 459.

▇ The court must conclude that the defendant was not negligent per se. It is established in Kentucky that the violation of a statute or ordinance, in which classification the regulations as adopted by the Public Service Commission of Kentucky must fall, is negligence per se. It is equally well established that even though there is such negligence, a party will not be entitled to recover for injury unless the violation is the proximate cause of the injury. See Hinton v. Dixie Ohio Exp. Co., 6 Cir., 188 F.2d 121, and numerous cases cited in the opinion. A comprehensive discussion of this rule of law is set forth in the case of Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564.

It is established by a preponderance of evidence and the court finds as a fact that the electric wires at the scene of the accident were placed in conformity with the regulations of the Commission. There is estimation and speculation as to the height of the wires by the various witnesses for the plaintiff. Even these witnesses, including the plaintiff himself, with one exception place the wires higher than the requirement. It is established by proof of the defendant that the height of the wires was not left to speculation or surmise. An actual measurement of the distance of the wires from the ground was made immediately or shortly after the accident and after the wire that had parted had been spliced. It is established without contradiction that the splicing of the wire did not shorten it or make it higher than it was prior to the accident. This positive proof, which was certainly subject to be contradicted if it was not true, discloses the fact that the phase wire was 17 feet and 10 inches from the ground and the neutral wire was 15 feet and 4 inches from the ground.

▇ I must conclude from the whole record in the case that the roadway or passageway along which these wires were strung was a private and not a public road. A public highway may be established only in the manner provided by statute or by its dedication to the public use and its acceptance by the proper authorities as a public way. Ac-

ceptance and dedication may be presumed by the continuous use of the road for 15 years accompanied by acts of control on the part of the county court. Louisville & N. R. Co. v. Engle, 278 Ky. 576, 129 S.W.2d 133; Louisville & N. R. Co. v. Whittle's Adm'rs, 216 Ky. 314, 287 S. W. 894; Chesapeake & O. Ry. Co. v. Young's Adm'r, 146 Ky. 317, 142 S.W. 709.

When viewed in the light of the rule it is seen that the evidence falls far short of showing this to be a public road. There is no evidence that it was established as a public road by the county court or of its dedication to the public use and acceptance by proper authorities as a public way. There is nothing in the record to show how long this road or passage way had been in existence, how many people used it, or for what purpose, or if it had ever been used at all. In other words, the record is entirely barren of anything about this road except that it led to two dwelling houses. Certainly the court should have the advantage of knowing from some witness much more than is revealed by the record before it places upon the defendant the high responsibility and obligation to meet requirements of installing wires along public roads. The court cannot draw inferences without the establishment by proof of facts on which inferences may be based.

Under the code provisions the height of 15 feet for the phase wire and 12 feet for the neutral wire were more than adequately met by the defendant when the wires at the time of the accident were 17 feet 10 inches and 15 feet 4 inches respectively.

The plaintiff has failed to show that the defendant was guilty of negligence per se. It is equally clear from the record that the plaintiff has failed to establish by a preponderance of evidence that the defendant is guilty of negligence as a matter of fact.

The theory of the plaintiff is somewhat obscure but apparently the plaintiff takes the position that because construction work was going on at the location of the accident and the defendant had wires under which certain machinery used in the construction must necessarily pass that it is charged with the responsibility of seeing that no injury results from use of the machinery by reason of the presence of the electric wires. To place upon the defendant such an obligation would be to make those selling electric current insurers of the safety of all persons passing under or near the wires. The law does not so require. Dennis' Adm'r v. Kentucky & W. Va. Power Co., 258 Ky. 106, 79 S.W.2d 377; Kentucky & West Virginia Power Co. v. Adams, Ky., 267 S.W.2d 717.

From the position of the plaintiff it must be deducted that the defendant was not only required to conform to an established code applying to all in a given class but must be further held accountable for the failure of any machinery of any height or character to pass under its wires even though at places accessible to pedestrians only. If this were the law it would make it practically impossible for suppliers of electricity to use overhead wiring. The time may come when overhead wiring will be outlawed but it is not now the case. The defendant had a right to stretch its wires over this particular place and so long as it conformed to an established code regulation it could not be expected to anticipate that a piece of equipment with a 15 to 16 foot boom extending into the air from the vehicle would engage the wires.

The construction company evidently recognized the fact that there was no such requirement of law and called attention to the workmen who were operating the machinery under and about the wires to the wires by placing red ribbons or flags on the wires. It is admitted by all witnesses for the plaintiff that they saw this danger signal and had been observing it for some time.

The general rule in Kentucky and in practically all other states is that persons or corporations maintaining and operating wires with a high and dangerous voltage of electricity must exercise the

highest degree of care for the protection of members of the public in all places where such persons have a right to be. Watral's Adm'r v. Appalachian Power Co., 273 Ky. 25, 115 S.W.2d 372. But while the law imposes this duty on those engaged in such business it does not make them insurers against all injury which may be caused by the operation of their business.

■ Perfect insulation of wires charged with a high voltage of electricity at places where persons have a right to go for business or pleasure is an element of the degree of care required but it does not extend to a requirement that all wires are to be insulated where no one could be reasonably expected to come into contact with them. Moran's Adm'x v. Kentucky Power Co., 228 Ky. 329, 14 S.W.2d 1087.

■■ Where no danger exists in a condition which merely makes it possible for injury to occur through some independent, unrelated and efficient cause, the condition cannot be held as the proximate cause. Even with the high degree of care imposed upon distributors of electricity, they are not required to guard against that which a reasonably prudent person under the circumstances in the instant case would not anticipate as likely to happen. They are not required to insulate wires at points where no one could be reasonably expected to come into contact with them. Morton's Adm'r v. Kentucky-Tenn. Light & Power Co., 282 Ky. 174, 138 S.W.2d 345.

In applying this rule in the case of Union Light, Heat & Power Co. v. Blackwell's Adm'r, Ky., 291 S.W.2d 539, 541, a case of marked similarity to the case at bar in many respects, the court said, "all the evidence in this case shows there was no reason for the power company to apprehend that a crane with a long boom would be used on the vacant or storage lot above which it had placed its wires."

As was said by Judge Simons in the opinion in Creasy v. Ohio Power Co., 6 Cir., 248 F.2d 745, 747, "in all questions of liability for negligent acts or omissions, the first consideration is whether the evidence discloses some fault on the part of the defendant leading proximately to the plaintiff's injury."

■ If the ultimate injury is brought about by an intervening act or force so unusual as not to have been reasonably foreseeable, the intervening act is considered as the superseding cause and the original actor, even though he may have been negligent, is not liable. Carr v. Kentucky Utilities Co., Ky., 301 S.W.2d 894.

There can be no doubt of the real cause of the accident in this case. It was not the presence of the wires, even though it may be conceded for the sake of argument that they were not of the proper height or properly insulated. Notwithstanding the fact that Claunch, the operator of the clamshell, was aware of the place of these wires and the fact that he had been working near them for more than two hours on the day of the accident and in the locality for several days, he, as an experienced operator, ran his machinery upon a wooden skid which automatically threw the boom high into the air, bringing it in contact with the wires under which the same piece of machinery with the same boom had moved in perfect safety on prior occasions. The truth is that but for this act of a fellow servant the plaintiff would not have been injured and it was the negligence of Claunch in the operation of the machinery which was the proximate cause of the injury. Claunch knew of the presence of the skid as he had been working there and making use of it.

■ A prior and remote cause cannot be the basis of an action if there intervened between the remote cause and the injury a distinct and unrelated cause for the injury and if no danger existed except because of the independent cause, such prior and remote condition was not the proximate cause. Kentucky Utilities Co. v. Searcy, 167 Ky. 840, 181 S.W. 662.

■ Reasonable care demands that every precaution be taken to avoid contacts with most electrically charged

wires of high voltage. Instead of exercising caution, Claunch deliberately brought his equipment as close as possible to the wires. The added impetus of a sudden raise from the ground, by reason of the wooden skid, threw the tall boom into the wires. Under such circumstances the defendant cannot be held liable. Rice v. Kentucky Utilities Co., 288 Ky. 170, 155 S.W.2d 760.

The Kentucky Court has frequently pointed out that it is impractical, if not impossible, to insulate wires carrying heavy currents of electricity. Dennis' Adm'r v. Kentucky & W. Va. Power Co., supra.

In Blackwell's Adm'r v. Union Light, Heat & Power Co., Ky., 265 S.W. 2d 462, the court pointed out that although there is no direct authority in Kentucky, it is the better rule in the determination of civil liability that those selling electric current should be required to insulate only in the event they may do so safely and effectively. I must determine as a fact that such a duty did not devolve upon the defendant in the case at bar.

The court is further of the opinion that the plaintiff was guilty of contributory negligence as a matter of law. One who, with knowledge of a dangerous situation, voluntarily places himself in a position where he takes the chance of being hurt, and in fact is injured cannot recover for his injuries. Carlisle v. Reeves, Ky., 294 S.W.2d 74. While knowledge of the danger is essential for the doctrine of assumed risk, that element of the case is provided here by the plaintiff's own testimony. He stated that he knew of the presence of the wires and that they had danger signals tied to them in the way of red flags and streamers. He was familiar with the type of machinery that was being operated with the long boom extending into the air toward the wires. It was his job to direct the movements of the clamshell. Consequently, he saw and knew of the wooden skid and its purpose in raising the machinery and boom. The first occasion that the boom brought the two wires in contact with each other was noticed by the plaintiff. Notwithstanding the knowledge of this dangerous condition he voluntarily and carelessly put himself in a position of danger.

At the trial the court took cognizance of the fact that the plaintiff was a young man of unusual intelligence. He had had one year of college training. His candor and apparent effort to tell the exact truth is commendable. However, the position of the boom on the clamshell and the placing of the wooden skid were a part of his responsibility. The plaintiff had seen this equipment, with the boom properly lowered, go back and forth under these wires. The first contact of the wires did no damage but created an electrical reaction which gave warning to all of those present that the boom would not pass over the skid and under the wires without striking them. On the first occasion the plaintiff left his position and ran to safety. When nothing happened except the electrical reaction he deliberately went back to his former position and placed himself in danger. Had he remained where he was he would not have received the injury. There is nothing to show that he could not have directed the operation of the boom and placement of the bucket from a position of safety.

One who exposes himself to known danger that is imminent and obvious to a person of ordinary prudence under like circumstances and with like knowledge is guilty of contributory negligence. Kentucky-Tennessee Light & Power Co. v. Priest's Adm'r, 277 Ky. 700, 127 S.W.2d 616. A risk of injury may be so obvious that one must be charged with knowledge of it. Vaught's Adm'x v. Kentucky Utilities Co., supra.

In the case of Porter v. Cornett, 306 Ky. 25, 206 S.W.2d 83, 87, the doctrine of assumption of risk is discussed. In that case the rule was stated to be that "one must exercise reasonable care for his own safety, and if he wishes to assume a known risk he is not exercising

478

that care and is, therefore, contributorily negligent."

In the case at bar the plaintiff, with his experience and intelligence, must have realized or should have realized the danger, and by placing himself in a precarious position, he did not exercise reasonable care for his own safety. He, as a matter of fact, assumed the risk of the very event which took place. By assuming it he was contributorily negligent. Porter v. Cornett, supra, as quoted in a recent Kentucky case, Electric Plant Board of City of Russellville v. Dotson, Ky., 304 S.W.2d 779.

I am of the opinion from the evidence and find as a fact that the plaintiff knowingly exposed himself unnecessarily to an obvious and imminent risk. He is therefore guilty of contributory negligence and not entitled to recover.