James B. MILLIKEN, Administrator of the Estate of William Blackwell, Deceased, Appellant,

v.

UNION LIGHT, HEAT & POWER COMPANY, Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1960.

James R. McGarry, Ralph P. Rich, Covington, for appellant.

Stephens L. Blakely, Marion W. Moore, Covington, for appellee.

STEWART, Judge.

This is the third appeal of this action, brought by appellant, James B. Milliken, as administrator for William Blackwell, deceased, against appellee, The Union Light, Heat & Power Company (hereinafter referred to as "Union"), for damages for the alleged wrongful death of Blackwell. At the first trial in December, 1951, a jury returned a verdict for Union. This judgment was reversed in December, 1953 (Ky., 265 S.W.2d 462). On the second trial in December, 1954, the jury awarded damages of $50,000 to Blackwell's administrator. This judgment was reversed in January, 1957 (Ky., 291 S.W.2d 539, 541).

The main question raised on this appeal is whether certain evidence introduced by appellant, hereinafter set forth in detail, raised an issue the jury should have been allowed to pass upon. The trial judge ruled it did not. This appeal is from the judgment dismissing the complaint.

The facts are fully set forth in the first two opinions, and we shall give only enough of them to furnish a background for this opinion. In brief they are that Union's high tension uninsulated wires ran over Columbia Street in Newport at a place where a pumping station was to be installed in connection with a floodwall. It appearing that the presence of the wires would interfere with the building of the pumping station, Union, at the contractor's request, relocated the wires and ran them above a vacant lot, sometimes referred to in the record as Lot 13, which lot abuts Columbia Street on the east. The wires carried 13,500 volts of electricity and were 36.38 feet above the ground. It was known that the contractor expected to store materials and equipment on the vacant lot.

On September 30, 1949, Blackwell, an employee of the contractor hired to build the floodwall, carried a steel cable suspended from the end of a 55-foot crane boom against one of the uninsulated high tension wires and was electrocuted. The crane was in Columbia Street on this occasion. Blackwell was at the time attempting to connect the hook on the end of the cable to a metal bucket which seems to have been on the ground directly beneath the wires. The only eyewitness to the accident, the crane operator, testified that Blackwell had watched the wires as he went about his job and had attempted to keep the cable a safe distance from them; but when the cable was no more than six or eight feet from the wires, the electricity had "jumped" from the wires to the cable, which he held with his hands.

In the second opinion we said the evidence did not disclose that Union had notice or knowledge that a crane with a long boom "would be or was expected to be or had been used on the vacant lot," and that opinion emphasized that "all the evidence was and is to the effect that the very purpose of relocating the wires over this lot was to avoid danger from such use." We reversed the judgment rendered at the second trial because it was not shown that Union was guilty of negligence "in having its wires where they were," and indicated that the lower court should have directed a verdict for Union.

The second opinion concluded with this statement: "Upon another trial, if there be no more evidence to establish actual or constructive notice and knowledge of the defendant company as to the use of the crane at the time and place where the accident occurred than was introduced on this trial, the court should direct a verdict for the defendant."

Therefore the primary inquiry posed in this appeal is: Was there sufficient evidence introduced at the present trial to establish actual or constructive notice and knowledge on the part of Union as to the use of the crane at the time and place where the accident occurred? On this third appeal, appellant maintains he has made up the deficiency in the evidence referred to in the second appeal. In this connection he relies upon the testimony of his witness, Donald H. Allen, who gave a deposition as a supplement to his proof adduced in the other trials of this case. Allen was the manager of the construction company that built the pumping station in Columbia Street; he was the person who had the wires relocated by Union; and he was the superintendent under whom . Blackwell worked. The following are the pertinent questions propounded to him and the respective answers he gave to them:

"Question: Well, did you have any discussion with the defendant's (Union's) representative with reference to the use of a crane in this work project? Answer: I can't recall the exact discussion. I'm quite certain that we discussed the use of the crane because the prime purpose of relocating the wires would be so we could use a crane, so that I'm relatively certain we did discuss the use of the crane there.

"Question: Now, then, Mr. Allen, was anything said concerning the use of the boom of that crane within the confines of Columbia Street? Answer: Well, now, that I couldn't be certain that there was anything said about that. Obviously if I am not certain that we discussed the crane, why, I couldn't say that we discussed the use in the confines of Columbia Street. There was only two places where you could put a crane and use it on the site, and that would be immediately south of the pump station and immediately east of the pump station.

\*   \*   \*   \*   \*   \*

"Question: Mr. Allen, when you were discussing this matter with the representatives of the defendant electric company, did you at any time say that you were going to limit the use of

the crane within the confines of Columbia Street? Answer: I said before I don't recall exactly what I said, but I am quite sure I couldn't have said it because it was the intent to use it beyond those confines, or (we) had to necessarily, to do the job, beyond the actual lines of Columbia Street itself."

The foregoing responses of Allen, when boiled down to their essence, amount to this: He could not remember what he said to the representatives of Union (who visited the site) as to where the crane was to be used. Furthermore, he could not even "be certain there was anything said" to any of them concerning its use outside the boundaries of Columbia Street. Actually, the crane itself was not on the lot nor under the wires, but was on Columbia Street when the accident occurred. The contact with the electric wire which proved fatal was made by a cable, attached to a boom, which Blackwell carried against it. There was testimony, too, that the crane might be used in other places than Columbia Street, but this evidence could include any location other than the vacant lot for the reason that no particular place was mentioned where it might be used.

■ We therefore must hold, as did the trial judge, that Allen's testimony is not evidence that Union knew or could have known the contractor intended to use the crane or cable on the vacant lot in close proximity to the wires at or before the time of the accident.

It is next argued that the question of knowledge or notice in regard to the use of the crane and the cable on the vacant lot had no bearing, under the applicable law, on the negligence of Union which it is contended arose from its non-observance of an ordinance provision, and that the lower court erred in dismissing the action. Our attention is called to the fact that when Union was granted by ordinance the right "to occupy the streets, lanes and public grounds of the City of Newport" for the purpose of erecting and maintaining its electrical transmission facilities, this ordinance also required that "all conducting wires" be "covered with a durable weatherproof insulation, embracing not less than two coatings." Union admits it did not comply with the insulating provision of the ordinance and, in consequence, appellant claims this omission was an act of negligence per se upon the part of Union.

■ Conceding that the law of Kentucky gives lip service to the abstract principle that the violation of a statute or an ordinance, standing alone, constitutes negligence per se (see Pryor's Adm'r. v. Otter, 268 Ky. 602, 105 S.W.2d 564), still it is equally well established that, even though there is such negligence, a party will not be entitled to recover for an injury unless the violation is the proximate cause of the injury. See the recent case of Isbell v. Union Light, Heat & Power Co., 162 F.Supp. 471, decided by Swinford, District Judge.

However, the ordinance which appellant insists was violated does not apply in the present situation, since the wires were strung over a lot owned by the city in its proprietary capacity and *not* over a street, lane, public ground, alley, or public place of the City of Newport, which are the only places to which the terms of the ordinance apply. In Lancaster-Electric Light Co. v. Taylor, 169 Ky. 384, 183 S.W. 903, it was held that such an ordinance does not apply to wires strung over private property.

■■ Where no danger exists except a condition which merely makes it possible for an injury to occur through some independent or unrelated cause, the condition cannot be held as the proximate cause. Even with the high degree of care imposed upon distributors of electricity, they are not required to guard against that which a reasonably prudent person under the circumstances would not anticipate as likely to happen. They are not required to insulate wires at points where no one could reasonably be expected to come into contact with them. See Morton's Adm'r v. Kentucky-

Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345.

We believe the trial judge decided correctly all the issues presented him for determination. It follows that he properly dismissed the complaint.

Wherefore, the judgment is affirmed.

MILLIKEN, J., not sitting.